UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. MCDERMOTT )<br>    PLAINTIFF )<br>)<br>vs )<br>)<br>MARCUS, ERRICO, EMMER & BROOKS, P.C. )<br>    DEFENDANT )<br>) | No. |

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

PARTIES

1. Plaintiff William M. McDermott ("McDermott") currently resides at 605 Eastern Avenue, Lynn, Essex County Massachusetts at units 105 and 104.

2. Defendant Marcus, Errico, Emmer & Brooks, P.C. ("Marcus, Errico") is a professional corporation, consisting of attorneys, which is organized and incorporated in Massachusetts and has its principal office located at 45 Braintree Office Park, Suite 107, Braintree, Norfolk County, Massachusetts.

3. Richard E. Brooks ("Brooks"), is a Massachusetts attorney and a director of and on information and belief a principal officer of Marcus, Errico

JURISDICTION AND VENUE

4. The United States District Court has jurisdiction of this controversy under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) because McDermott asserts claims for relief under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq. and the court has supplemental jurisdiction of McDermott's related state law claims under 28 U.S.C. §1328.

1

Facts

5. In December 2002, McDermott became an owner of two condominium units, Units 104 and 105, located at Pondview Condominium ("Pondview"), 605 Eastern Ave., Lynn, Massachusetts.

6. Since that time he has maintained his principal residence in or otherwise has used for personal or household purposes one or the other or both of these two units at the same time.

7. Condominium assessments and charges are consumer debts as defined pursuant to 15 U.S.C. § 1692a(5).

8. Marcus, Errico regularly engages in the business of collecting overdue condominium assessments for condominium associations throughout Massachusetts and therefore is a debt collector under the FDCPA as defined pursuant to 15 U.S.C. § 1692a(6).

9. In 2004, Pondview had approved an additional "loan payback" fee of approximately $16 per month which was to be added to the monthly assessment per unit. As usual, the due date for payment of the monthly assessment with the additional "loan payback" was the 15th of each month.

10. In the summer of 2004, McDermott fell several months behind in the payment of the assessment for each of his units. Accordingly, Pondview, in accordance with its usual policy, also assessed McDermott $25 per month late fee for each unit.

11. McDermott paid the late assessments and the assessed late fees in September, 2004 and both McDermott and Pondview understood and agreed that the payments made him current through September, 2004.

12. McDermott thereafter was late in paying the October assessments, thereby

incurring, he thought, the $25 late fee per unit for that month.  He was timely paying the November assessments but was again late in paying the December assessments.

14. In November/December 2004, on information and belief, Pondview contacted Marcus, Errico relative to the collection of overdue condominium assessments.

14. In December 2004, Pondview sent McDermott two bills which contained additional charges Pondview had never before assessed any unit owner or otherwise had given any notice to McDermott that it would assess.  The bill treated the "loan payback" of $16 as a separate assessment for purposes of the late fee, so that instead of a $25 per unit late fee, the bill charged $25 per late "assessment" per unit, or $50 per unit for late payments.

15. Notwithstanding that McDermott had received no previous notice of this change, the bill sought to charge the additional late fees for the late October and December payments.

16. More egregiously, and despite the fact that Pondview and McDermott had clearly understood and agreed that he had become current in September, 2004, the bill sought additional late fees for the late summer payments.

17. The average unsophisticated consumer in Massachusetts does not understand and McDermott did not understand that under Massachusetts law they may not withhold payment of disputed condominium late fees, but must first pay the disputed late charge and then seek relief relative to same.

18. The average unsophisticated consumer in Massachusetts does not understand and McDermott did not understand that under Massachusetts law, if they withhold payment of disputed late fees, they may be held to pay the condominium association's legal fees incurred to collect same, irrespective of whether the fee is lawful or not.

3

19. The average unsophisticated consumer in Massachusetts does not understand and McDermott did not understand that under Massachusetts law, there is an automatic lien on their condominium unit for any legal fees they may become liable for.

20. On information and belief, in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f. Marcus, Errico effected this unreasonable, unfair, unlawful, unexplained, and retroactive change in Pondview's policy for the specific purpose of precipitating a dispute with McDermott in order to generate legal fees for Marcus, Errico to be paid by McDermott which would be secured by his condominium units.

21. When McDermott tendered the January, 2005 payments for the two units, he notified Pondview that he disputed these additional late fee assessments and that he refused to pay them.

22. There was no further communication between McDermott and Pondview concerning the matter for the next several months.

23. On March 31, 2005, Brooks sent by certified mail two letters to McDermott stating that certain amounts of "financial obligations" as of this date. McDermott received the letter relative to unit 104 but not the letter for unit 105.

24. The letter for unit 104 stated an amount due of $1,545.61 without any breakdown or explanation as to how that amount was derived. It did make it clear that the amount included the disputed late fees and that his tendered January checks had not been accepted.

25. The unit 104 letter, and on information and belief the unit 105 letter both included validation language which violated 15 U.S.C. § 1692g. The phrasing of the letter misleadingly inferred that McDermott had only thirty days to dispute the validity of the debt (including the

disputed retroactively charged late fees) instead of making it clear that the thirty days applied only to Marcus, Errico's right to assume that the debt was valid. This confusion was compounded by the letter's subsequent emphatic statement that Marcus, Errico was not required to wait thirty days before undertaking further collection efforts which overshadowed and otherwise obfuscated Marcus, Errico's subsequent unemphasized statement concerning its suspension of such efforts upon receipt of notice of a dispute.

26. The violative language contained in these two letters were repeated in numerous communications to McDermott from Marcus, Errico up until the present.

27. On or about April 16, 2005, Pondview, served on McDermott two statements containing detailed schedules of assessments and fees due for units 104 and 105 of $1,507.37 and $1,310.24 respectively, which amounts included the disputed late fees.

28. In order to resolve the matter and to avoid any further controversy, McDermott refinanced unit 104, and on April 21, 2005, using the proceeds, tendered two checks to Pondview for the full amounts stated in Pondview's two April 16, 2005 statements, including the disputed late fees, and a letter that indicated even though he was paying the late fees, he still disputed them.

30. On April 26, 2005, Brooks, knowing that McDermott had made such tender, prepared and mailed two complaints to Lynn District Court which falsely stated that McDermott had been "duly assessed common expenses and charges" in the amounts of $2,694.94 for unit 105 and $2,567.37 for unit 104 "which have not been paid when due."

31. He also that date prepared and mailed to the Lynn District Court pursuant to M.G.L. c. 218, § 19A(a) two Statement of Damages which both falsely stated that "[t]here are

common expenses due as of this date in the amount of " the above respective amounts stated in the two Complaints.

32.     Brooks also subsequently mailed copies of the court-stamped complaints for recording to the Essex County South Registry of Deeds in Salem, Massachusetts.

33.     Marcus, Errico also subsequently mailed these Complaints and Statements to the two mortgagees of units 104 and 105.

34.     The Statements and Complaints were false and otherwise violated 15 U.S.C. §§ 1692d, 1692e, and 1692f.  The documents failed to state that McDermott had tendered the full amount of assessments and late fees he had been notified were due.  The documents state, in violation of state law, that the amounts claimed had been "duly assessed" and had not been paid when due when Brooks and Marcus, Errico knew that McDermott had had no notice that these amounts were claimed to be due much less given a reasonable opportunity to pay same.  The amounts stated as due were greater than the amounts shown as due in Marcus, Errico's own records as due at the time.  And the statements deliberately, misleadingly, and falsely conflate Marcus, Errico's legal fees, which comprised the bulk of the amounts claimed due, with condominium common expenses.

35.     From that time until September 19, 2008, Marcus, Errico, prepared, mailed and filed in Lynn District Court and Essex County Superior Court; mailed and recorded in the Essex County South Registry of Deeds in Salem, Massachusetts; and mailed to McDermott's mortgagees, eight additional Complaints and Statements and one Amended Complaint which contain the same or similar violations of  15 U.S.C. §§ 1692d, 1692e, and 1692f.  The Complaint in Essex Superior Court violated  15 U.S.C. §§ 1692i as well.

36. On May 2, 2005, after filing the above suits but prior to serving McDermott, Brooks wrote a letter to McDermott which misleadingly and deceptively stated that Pondview "will be returning" McDermott's tendered "checks directly to you" because "[t]hese checks do not represent payment in full. When you made the payment, you did not include any legal fees."

37. The letter was misleading and deceptive in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f because it did not explain that the legal fees McDermott had "not included" in the tendered checks were the fees Marcus, Errico claimed for preparing and filing the two lawsuits after McDermott had tendered the checks.

38. The letter was misleading and deceptive in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f because it stated that McDermott had withheld payments of "condominium fees" when Brooks knew that McDermott had tendered the full amounts he had been notified by Pondview were due and because it again deliberately and misleadingly conflated Marcus, Errico's legal fees with Pondview's common expense assessments by referring to both as "condominium fees". Additionally, the amounts for legal fees claimed due were greater than the amounts Marcus, Errico's own records showed has having been incurred or charged at that time.

39. From that time until the present, Marcus, Errico consistently and deliberately misleadingly, confusingly, and deceptively conflated its legal fees with condominium assessments in most of its communications concerning McDermott's debts.

40. McDermott telephoned Brooks to obtain an explanation of his May 2, 2005 letter.

41. During the course of the conversation, McDermott made it clear to Brooks that he disputed his being charged legal fees to collect an amount he had already paid. Brooks responded by telling McDermott that if he didn't pay the legal fees Brook's claimed, by the end of

the year Brooks would have a $20,000 lien on each of McDermott's units and would end up owning both.

42. Brooks' statements to McDermott were clearly oppressive and extortive in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

43. On May 17, 2005, Brooks mailed another letter to McDermott "enclos[ing] current ledgers relative to Unit 104 and 105." The ledger mailed that date showed legal fees due of $536 and a total due of $2,049.47 which were amounts substantially less than the amounts claimed due in the Complaint and Statement of Damages filed, recorded, and sent to McDermott's mortgagee and Brook's prior May 2, 2005 correspondence.

44. These communications were the beginning of a long, relentless series of communications by Marcus, Errico to McDermott and third parties concerning McDermott's debts which were deceptive, oppressive, misleading, confusing, inconsistent, and extortive in violation of 15 U.S.C. §§1692d, 1692e 1692f and which have continued up to the present.

45. The eight additional lawsuits filed by Marcus, Errico against McDermott, at least two of which sought the same relief for the same claims made in a prior pending lawsuit were vexatious and oppressive in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

46. Despite the fact that Marcus, Errico knew that after April, 2007, McDermott was represented by counsel relative to the debts owed to Pondview, Marcus, Errico nevertheless filed and served most of the the above lawsuits directly on McDermott and continued to send directly to him without any notice to his attorney communications concerning these debts in violation of 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692f.

47. Accountings and details provided by Marcus, Errico to McDermott, the courts,

and third parties, from March, 2005 through March, 2008 and to date concerning debts McDermott allegedly owed were deliberately misleading, sporadic, inconsistent, confusing, and contained numerous errors and double billings, and were largely illegible in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

48. Over the next four years Marcus, Errico filed documents in court which had not previously been provided to McDermott in order to create the false impression that McDermott had regularly been provided more accurate and complete information concerning his alleged debts than had actually occurred.  Each and every time that Marcus, Errico did so was clearly a violation of  15 U.S.C. §§ 1692d, 1692e, and 1692f.

49. Beginning in May, 2005, Marcus, Errico consistently made communications to McDermott's mortgagees concerning McDermott's debts and demanding payments without notifying McDermott or, subsequently, his attorney, of these communications in violation of 15 U.S.C. §§ 1692d, and 1692f.

50. The communications Marcus, Errico regularly made with McDermott's mortgagees concerning McDermott's debts were  more legible, comprehensible, and detailed than that which Marcus, Errico was contemporaneously providing to McDermott concerning same in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f further evidencing Marcus, Errico's bad faith in its communications and non communications with McDermott.

51. Without notifying McDermott, Marcus, Errico demanded and received on May 20, 2004 a payment of $3,800.27 from Bayview Loan Servicing, LLC ("Bayview"), the mortgagee on Unit 105.  Without notifying McDermott, Marcus, Errico filed a dismissal of the Lynn District Court complaint relative to Unit 105.  Marcus, Errico's communications and

actions without notifying McDermott violated 15 U.S.C. §§ 1692d, 1692e, and 1692f.

52. In addition to his conversation with Brooks, McDermott made it clear in correspondence and by notations on his checks that payments were not to be applied to Marcus, Errico's attorney fees or disputed late fees or allegedly late condominium assessments but only to contemporaneous and future condominium assessments.  Marcus, Errico repeatedly violated 15 U.S.C. § 1692h by applying McDermott's payments in contravention of his directions to disputed debts, and imposing additional late fees with no notice to McDermott that it was doing so in violation of  15 U.S.C. §§ 1692d, 1692e, and 1692f.

53. Marcus, Errico repeatedly violated 15 U.S.C. § 1692h by applying payments it received from McDermott's mortgagees, including but not limited to payments of $3,800.27 on May 20, 2004 and $3,015.55 on December 15, 2005 from Bayview Loan Servicing, LLC and $3,454 from M&T Mortgage on or about August 29, 2006, all of which Marcus, Errico applied toward  its legal fees, and disputed late fees in violation of 15 U.S.C. § 1692h.

54. M&T  Mortgage was the mortgagee for unit 105.  Marcus, Errico misapplied that payment to assessments along with disputed legal fees for unit, thereby causing additional late fees, costs, and legal fees for unit 105 in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

55. On or about March 28, 2007, judgment for Pondview was entered in one of the actions in the amount of $3,106.17 for condominium assessments and late fees, which amount included numerous late fees and other charges incurred as a result of Marcus, Errico's unlawful application of payments from McDermott, and $18,803 in legal fees.

56. McDermott duly filed a notice of appeal which to this date has not been dismissed.

57. On July 3, 2008, Marcus, Errico filed a complaint and recorded same in the Registry of Deeds and sent a copy of same to McDermott's mortgagee which falsely claimed that McDermott had been duly assessed common expenses and charges in the amount of $10,351.33 since April 1, 2007 which have not been paid.

58. This complaint was not served on McDermott nor was a copy sent to his attorney. There had been no previous communication to McDermott stating that these amounts, which consisted almost entirely of additional disputed legal fees, was due.

59. Marcus, Errico commenced communications concerning these claims with McDermott's mortgagee without notice to McDermott or his attorney.

60. On information and belief, in late July, early August, 2008, Marcus, Errico received payment from McDermott's mortgagee for the previous $18,803 in disputed legal fees for which appeal was pending and the additional $10,351.33 in the July claim which consisted principally of disputed legal fees and applied same to said disputed fees in violation of 15 U.S.C. § 1692h.

61. In August, 2006, McDermott filed a counterclaim against Pondview in one of the above actions seeking recovery for water damage to his unit.

62. On information and belief, Pondview's insurer agreed to pay Marcus, Errico to defend Pondview relative to the McDermott's counterclaim.

63. There is no basis in Massachusetts law to charge a unit owner legal fees to defend against claims made by same against said condominium association.

64. Notwithstanding that Marcus, Errico was paid by Pondview's insurer to defend against McDermott's counterclaim and that there is no lawful basis in Massachusetts to collect

11

legal fees from a condominium unit owner to defend against claims made by same, Marcus, Errico repeatedly, from that time until May, 2008, filed in court, served on McDermott's attorney, served directly on McDermott, and served on McDermott's mortgagee claims against McDermott for substantial legal fees to defend against McDermott's counterclaim in violation of 15 U.S.C. 1692.

65. This complaint does not purport to aver each and every violation of the FDCPA or or unfair and deceptive act by Marcus, Errico acting as a debt collector for the past four years.

66. To date, Marcus, Errico has collected approximately $40,000 to $45,000 in legal fees from McDermott's mortgagees and has a judgment for an additional $14,000 in legal fees not yet collected which were directly caused by its deliberate, intentional provocation of a dispute between Pondview and McDermott over $150 in unlawful late fees and by its other, relentless, egregious, unfair, deceptive, false, misleading, oppressive, and abusive violations of the FDCPA.

67. As a direct and proximate result of Marcus, Errico's actions, McDermott has incurred substantial legal fees to defend against same.

68. As a direct and proximate result of Marcus, Errico's actions, McDermott has incurred severe emotional distress

69. As a direct and proximate result of Marcus, Errico's actions, McDermott has lost both of his condominium units to foreclosure.

70. As a direct and proximate result of Marcus, Errico's actions, McDermott has lost substantial income.

COUNT ONE
THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692

71.   McDermott repeats and reavers herein the above paragraphs.

72.   The above violations of the FDCPA were persistent, egregious, relentless, and intentionally oppressive and abusive.

Wherefore, McDermott demands judgment be entered against Defendant Marcus, Errico, Emmer & Brooks, P.C. for all his damages for his injuries caused thereby, which include but are not limited to, his incursion of substantial legal fees, both to his attorney and to Marcus, Errico, his suffering severe emotional distress, his incurring substantial liabilities to Pondview and his mortgagees, his loss of income, and his loss of his two condominium units; and judgment for statutory damages of $1,000; and judgment for his reasonable attorney's fees and costs incurred in connection with this action; and judgment for such further relief as the court deems warranted.

COUNT TWO
THE MASSACHUSETTS CONSUMER PROTECTION ACT
M.G.L. c. 93A

73.   McDermott repeats and reavers herein the above paragraphs.

74.   Violations of the FDCPA are per se unfair and deceptive acts under of M.G.L. c. 93A, § 2.  904 C.M.R. 3.16(4).

75.   The above actions by Marcus, Errico are unfair and deceptive acts under M.G.L. c., 93A independent of and irrespective of whether they are violations of the FDCPA.

76.   The above actions are per se willful and knowing violation of M.G.L. c. 93A, § 2.

77.   Marcus, Errico willfully and knowingly repeatedly and relentlessly violated M.G.L. c. 93A, § 2 in its actions to collect debts from McDermott.

78.   On or about December 11, 2008, McDermott served on Marcus, Errico, by first class and certified mail a written demand for relief, which reasonably described Marcus, Errico's

unfair and deceptive acts and practices and the injuries suffered by McDermott thereby.

79. Marcus, Errico failed to tender a reasonable settlement of McDermott's claims within thirty days of said mailing or practice.

80. Marcus, Errico's refusal to grant McDermott relief upon demand was made in bad faith with knowledge or reason to know that the acts and practices complained of violated M.G.L. c. 93A, § 2.

Wherefore, McDermott demands judgment for all his damages for his injuries caused by the defendant's violations of M.G.L. c. 93A, § 2, which include but are not limited to, his incursion of substantial legal fees, his suffering severe emotional distress, his incurring substantial liabilities to Pondview and his mortgagees, his loss of income, and his loss of his two condominium units; and judgment for three times such amounts; and judgment for his reasonable attorney's fees and costs incurred in connection with this action, and judgment for such further relief as the court deems warranted.

McDermott hereby demands trial by jury under Rule 38(b), Fed.R.Civ.P.

I, William McDermott, on oath do depose and state that the above statements are true.

   ___/s/ William McDermott_____
   William McDermott

      William McDermott
      By his attorney,

      _/s/ Philip H. Cahalin_____
      Philip H. Cahalin, BBO # 545538
      85 Exchange Street, Suite 206
      Lynn, MA 01901
      t. 781.598.3130
      f. 781.598.3131
      pcahalin@cahalinlaw.com