UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. MCDERMOTT,<br>Plaintiff<br><br>v.<br><br>MARCUS, ERRICO, EMMER &<br>BROOKS, P.C.,<br>Defendant | )<br>)<br>)<br>)    C.A. NO.: 1:09-cv-10159-MBB<br>)<br>)<br>)<br>)<br>) |

## MARCUS, ERRICO, EMMER & BROOKS, P.C.'S POST-TRIAL BRIEF

The Defendant, Marcus, Errico, Emmer & Brooks, P.C., hereby submits this post-trial
brief pursuant to this Honorable Court's Order of February 7, 2011.

### Summary

The evidence at trial established that Marcus, Errico, Emmer & Brooks, P.C.'s ("MEEB")
conduct, relative to collecting delinquent condominium common expense assessments from the
Plaintiff, William M. McDermott, on behalf of MEEB's client, Pondview Condominium
Association ("Pondview"), was authorized by, and in accordance with, the underlying
condominium documents and applicable law and did not violate the Fair Debt Collection
Practices Act ("FDCPA") or M.G.L. c. 93A. The evidence established that the Plaintiff
McDermott was admittedly delinquent in his condominium common expense assessments and
MEEB, as counsel for Pondview, acted to enforce the lien established by M.G.L. c. 183A. The
Plaintiff McDermott failed to prove at trial that he suffered any damages as a proximate result of
any alleged violation by MEEB of the FDCPA or M.G.L. c. 93A.

## Pending Motions

On January 24, 2011, the parties presented oral argument on the following motions, as to which decisions remain pending:

- Motion in Limine to Preclude Evidence of Conduct Occurring Prior to February 3, 2008, in Support of Plaintiff's FDCPA Claims (#34); and

- Motion in Limine to Preclude Litigation of Previously Determined Issues (#23).

On February 7, 2011, MEEB filed a Motion for Judgment on Partial Findings (#46), which remains pending with the Court.

## Facts

1. McDermott, at material times hereto, was the owner of Units 104 and 105 at Pondview Condominiums; Unit 105 was used by McDermott primarily as a rental property.[1] *Tr. V 24:13-17; Tr. VI 24:25-25:14.*

2. The assessments as to McDermott's two units represented approximately 10% of the condominium fees charged by Pondview; McDermott knew that the condominium fees had to be paid as assessed in order to keep the condominium budget in balance and pay for necessary items such as insurance, property maintenance, etc. *Tr. VI 27:10-20, 28:23-29:4.*

3. Pondview first became a client of MEEB's in March 2005. *Tr. IV 30:20-22.* MEEB had no involvement or input in 2004 or 2005 concerning Pondview's determination and/or modification of its late fee policy. *Tr. IV 30:23-25.* See *Trial Exhibit 6.*

---

[1] References to the trial transcripts are as follows: Tr. I = Day 1, January 25, 2011; Tr. II = Day 2, January 26, 2011; Tr. III = Day 3, January 31, 2011; Tr. IV = Day 4, February 1, 2011; Tr. V = Day 5, February 3, 2011; and Tr. VI = Day 6, February 7, 2011.

4.   When Pondview became MEEB's client in March 2005, Pondview advised MEEB that McDermott was refusing to pay his required condominium common expense assessments. *Tr. IV 34:24-35:9.*

5.   In order to keep Pondview's budget in balance, all unit owners had to pay the necessary condominium common expense assessments. *Tr. IV 29:1-4.*

6.   At all times material hereto, MEEB represented Pondview; at no time did MEEB represent McDermott. *Tr. IV 37:12-18.*

7.   MEEB had extensive knowledge and experience concerning the Massachusetts Condominium Act (M.G.L. c. 183A) and, in this regard, Stephen Marcus is credited with drafting the amendments to the Act and Richard Brooks was involved in the drafting of additional amendments to the Act. *Tr. IV 24:2-12.*

8.   MEEB has a policy in place in its collection unit to ensure compliance with the FDCPA. *Tr. IV 44:1-4.*

9.   MEEB attorneys undergo training relative to the requirements of the FDCPA, with attorneys attending seminars and seminar materials being distributed to others in the collection unit; partners at MEEB are also available to consult with associates concerning compliance with the FDCPA. *Tr. IV 20:22-22:14.*

10.   MEEB took steps on a regular basis to ensure compliance with the FDCPA and M.G.L. c. 183A. *Tr. IV 60:22-61:1.*

11.   In addition to the requirements of M.G.L. c. 183A, Article V of Pondview's bylaws also required a unit owner to pay condominium assessments and fees. *Tr. IV 52:17-22.* See *Trial Exhibit B.*

12.    MEEB's notices, relative to collection of outstanding condominium expense assessments

pursuant to M.G.L. c. 183A, were created in order to comply with the FDCPA and were

crafted in accordance with FDCPA case law. *Tr. I 62:17-20, 65:13-23.*

13.    MEEB's notices pursuant to M.G.L. c. 183A to McDermott informed him that because of

common expense assessments, interest, late fees, and other charges which may become

due, including attorney's fees and costs, the amount due on the day McDermott paid may

be greater than the amount stated as due as of the date of the notice and that an additional

payment might be necessary to bring McDermott's account current. See, e.g., *Trial*

*Exhibit 5.*

14.    MEEB's notices pursuant to M.G.L. c. 183A further informed McDermott, inter alia, that

if he had any questions, he could call MEEB; the notices contained a telephone number

for McDermott to call. See, e.g., *Trial Exhibit 5.*

15.    MEEB's notices pursuant to M.G.L. c. 183A also informed McDermott that the amount

stated as due included collection costs through the date of the notice. See, e.g., *Trial*

*Exhibit 5.*

16.    MEEB's notices pursuant to M.G.L. c. 183A to McDermott stated the amount due as of

the date of the respective letter. *Tr. I 41:10-25, 42:7-11.*

17.    McDermott understood the "Notice of Important Rights" which MEEB included in its

notices pursuant to M.G.L. c. 183A. *Tr. VI 11:3-12:13, 13:21-25.* See e.g., *Trial Exhibit*

*40.*

18.    The notices pursuant to M.G.L. c. 183A which MEEB sent to McDermott informed

McDermott of the amount owed and, as such, McDermott's claim that he was uninformed

as to same is not credible. See e.g., *Trial Exhibits 5, 8, 9, 21, 25, 26, 29, 40, 44, 49, 50, 56, 61, 76.*

19. It was MEEB's policy to attach a ledger, itemizing the common expense assessments, to the notices pursuant to M.G.L. c. 183A it sent to delinquent unit owners. *Tr. II 6:18.*

20. MEEB's practice, when sending the 30 and 60 day notices pursuant to M.G.L. c. 183A to unit owners, was to attach a ledger which had been prepared by the client; this was done with regard to the notices sent to McDermott. *Tr. IV 49:4-11.* See, e.g., *Trial Exhibit 26.*

21. No evidence was adduced at trial that MEEB had any involvement relative to a change in the manner in which Pondview compiled its ledgers concerning delinquent common expense assessments.

22. There was no evidence at trial that MEEB instructed or advised Pondview how to compile the ledgers nor how payments made should be applied, credited, and/or listed thereon. *Tr. IV 48:4-10.*

23. MEEB had no involvement in the preparation of the ledgers. *Tr. IV 48:4-10.*

24. The ledgers prepared by Pondview were provided to, and reviewed by, the Pondview Board of Trustees. *Tr. II 80:17-81:1.*

25. MEEB reviewed the ledgers it was provided by Pondview as to the amount owed in order to determine if the amount appeared accurate; MEEB also reviewed its billing records in order to calculate the total amount owed. *Tr. II 32:23-33:14, 81:14-19.*

26. MEEB calculated the amount owed by McDermott based upon the ledgers provided by Pondview and MEEB's pre-bills concerning its fees. *Tr. II 30:13-16.*

27.   MEEB's invoices, relative to its fees concerning the collection efforts, were sent to Pondview; the invoices were not provided to McDermott. *Tr. IV 37:19-25*. See, e.g., *Trial Exhibit 23*.

28.   MEEB maintained a policy in order to insure that it bills to Pondview were accurate. *Tr. IV 47:21-24*.

29.   MEEB would have the associate, who had billed the time, review the bill to Pondview for accuracy and then the bill would again be reviewed by a partner. *Tr. IV 47:25-48:3*.

30.   McDermott would not have been aware of any inaccuracies in MEEB's billing records as copies of same were not provided to McDermott. *Tr. IV 38:1-6*.

31.   If a mistake was made in the amount of attorney's fees stated as due, and the unit owner was provided with an inaccurate amount as due, it was MEEB's practice and policy to adjust the legal fee as necessary and correspondingly credit the unit owner. *Tr. II 94:6-12*.

32.   MEEB informed McDermott that his April 2005 checks, which McDermott stated represented payment in full, to Pondview were being returned to McDermott as they did not actually represent payment in full in that they did not include legal fees. *Tr. II 12:3-5, 19-23*.

33.   The April 2005 checks, which McDermott had sent to Pondview, were returned to McDermott. *Tr. II 17:18-18:14, 19:1-3*.

34.   The attorneys' fees stated as due in MEEB's May 2, 2005, notice to McDermott included fees associated with the filing of complaints on behalf of Pondview, for which McDermott was responsible pursuant to M.G.L. c. 183A. *Tr. II 13:2-4, 18-25, 14:19-15:4*.

35. The sheriff's fees were listed as estimated on the ledgers enclosed with MEEB's May 17, 2005, notice to McDermott as the bills from the sheriff had not yet been received by MEEB; as such, the actual amounts were not yet known. It was MEEB's policy and practice to enter the date of the bill from the sheriff into their invoices rather than the date the bill was received. *Tr. II 28:7-20, 29:10-18, 30:17-24.*

36. As to the $150 dismissal charge referenced in the May 17, 2005, notice, if there were no issues associated with the dismissal the charge would have been $75 and McDermott would have ended up with a credit for the difference. *Tr. II 39:5-40:15, 41:3-24.*

37. MEEB, no later than May 20, 2005, sent McDermott a corrected notice which removed the duplicate legal fees which had originally been included in the May 17, 2005, notice. *Tr. II 44:3-11, 46:17-21.* See *Trial Exhibit 22.*

38. The amount stated as due in MEEB's October 4, 2005, notice to McDermott matched the amount reflected as due on the attached ledgers. See *Trial Exhibits 25, 26.*

39. The collection notices which MEEB sent to McDermott were required by M.G.L. c. 183A and were not sent to embarrass or cause concern on the part of McDermott or for any improper purpose. *Tr. IV 57:22-58:14.*

40. While McDermott claimed that he did not receive any notices from MEEB prior to May 2005, the evidence at trial established that McDermott was ordered by the United States District Court, on November 23, 2005, to report to Coolidge House when there was availability. *Tr. V 98:1-12.*

41. With regard to its collection efforts as to McDermott, Pondview would instruct MEEB as to the next step it desired MEEB to take in the collection process. *Tr. IV 58:18-22.*

42. The correspondence, documents, and pleadings served and filed by MEEB, on behalf of its client, Pondview, all related, either preliminarily, or directly, to litigation relative to enforcement of the lien established by M.G.L. c. 183A. *Tr. IV 59:8-17.*

43. McDermott never sent a writing to MEEB disputing the debt or MEEB's attorney's fees. *Tr. IV 58:23-59:7.*

44. Neither Richard Brooks, nor anyone at MEEB, ever told McDermott that Brooks and/or MEEB would own McDermott's condominium units in the event McDermott failed to pay the amounts owing. *Tr. IV 36:5-19.*

45. Richard Brooks did not have a telephone conversation with McDermott on or about May 9, 2005. *Tr. III 22:5-14, 25:11-13; Tr. IV 36:5-7.*

46. McDermott's testimony to the effect that he had a telephone conversation with Richard Brooks on May 9, 2005, was not credible. The trial testimony revealed that McDermott offered conflicting versions of the circumstances surrounding the alleged phone call and, additionally, McDermott's testimony that he called information to obtain MEEB's telephone number was particularly lacking in credibility, given that the notice from MEEB that McDermott apparently had in front of him at the time of the telephone conversation included MEEB's telephone number. Lastly, McDermott failed to produce cell phone records which he alleged would have substantiated the telephone conversation, which McDermott admitted would have been "pretty important evidence." *Tr. IV 44:13-24; Tr. V 29:21-30:6, 92:8-93:13; Tr. VI 15:20-16:22.*

47. McDermott testified at trial that he was traveling as a passenger in Kathleen Larrabee's vehicle at the time of the alleged telephone conversation while he had previously testified

8

under oath in this case that he was driving at the time. *Tr. V 30:7-11, 95:1-6; Tr. VI 17:18-18:4.*

48. Even if McDermott had a telephone conversation with Richard Brooks on May 9, 2005, as alleged by McDermott, McDermott's testimony at trial revealed that at no point during the alleged conversation did McDermott inform Brooks that he was disputing the amount owed/attorney's fees. *Tr. V 31:4-33:14.*

49. Neither Richard Brooks, nor anyone at MEEB, ever told McDermott that MEEB would "run up" legal fees as against McDermott. *Tr. IV 36:20-22.*

50. Payments made as to the common expense assessments owed by McDermott were applied by Pondview. *Tr. II 82:18-22; Tr. III 41:11-16, 55:11-18; Tr. IV 39:22-40:2.*

51. MEEB had no role in determining the allocation of payments made as to McDermott's debt. *Tr. IV 40:10-14.*

52. McDermott never made any payments to MEEB and never told MEEB how any payments made were to be allocated. *See, e.g., Trial Exhibit 35; Tr. V 36:7-37:7.*

53. There was no evidence at trial that MEEB discussed, with Pondview, any "directions" concerning payments allegedly given by McDermott to Pondview. *See Trial Exhibit 23, June 30, 2005, invoice.*

54. MEEB filed multiple law suits against McDermott in order to protect the successive six month liens, as required by M.G.L. c. 183A, of MEEB's client, Pondview. *Tr. I 85:3-6, 87:22-88:19; Tr. IV 25:5-10, 26:3-6.*

55. MEEB did not file the collection actions against McDermott in Small Claims as such court does not have jurisdiction to enforce the lien established by M.G.L. c. 183A and cannot order the sale of the condominium units. *Tr. IV 30:7-15.*

9

56.  Two of the District Court actions filed by MEEB (one as to each of the subject
     condominium units) were tried and resulted in judgments in favor of Pondview against
     McDermott as to the unpaid condominium common expense assessments; the judgments
     in favor of Pondview included attorneys' fees. See *Trial Exhibit 62. Tr. IV 63:1-7.*

57.  MEEB copied McDermott on the statutory notices sent to McDermott's mortgagees and,
     as such, McDermott was aware of same. See e.g., *Trial Exhibits 11, 12, 13, 36, 37, 51,
     52.*

58.  There was no evidence at trial that McDermott's mortgagees ever "informed the
     organization of unit owners of [their] name and mailing address."

59.  McDermott made his last payment as to either of the mortgages on the subject
     condominium units in June 2006. *Tr. IV 5:24-6:2.*

60.  McDermott has not paid rent, condominium fees, or property insurance premiums since
     at least 2008. *Tr. V 111:13-112:18.*

61.  MEEB provided notice to McDermott's mortgagees in order to provide the mortgagees
     with the opportunity to cure the delinquency. *Tr. I 70:3-8, 71:11-17, 78:24-79:10; Tr.
     IV 53:2-23.*

62.  In addition to the priority amount of the delinquency, most lenders also request that
     MEEB provide a breakdown of the total amount owed to the condominium association by
     the delinquent unit owner. *Tr. III 81:9-16, 83:1-5.* See e.g., *Trial Exhibits 39, 42, 45, 46,
     55.*

63.  MEEB continued its collection efforts on behalf of Pondview as to Unit 105 after
     Bayview's $3,800.27 payment due to the fact that McDermott failed to make future
     payments when due. *Tr. IV 54:22-56:2.*

64. McDermott knew that a portion of the $3,800.27 payment by Bayview was used toward outstanding legal fees. *Tr. VI 15:10-14.*

65. McDermott attributed his lack of "comfort" living at Pondview due to the fact that a negative environment had been created by Joanne Vischetti, a Pondview trustee. *Tr. IV 27:5-9.*

66. At material times hereto, McDermott experienced stress as a result of, inter alia, a strained relationship with his step-brother, litigation that he filed relative to a mortgage as to one of the units as well as a TILA suit, all of which allegedly caused McDermott stress and anxiety and all of which were unrelated to MEEB's representation of Pondview. *Tr. IV 8:15-19, 31:4-24, 32:14-33: 4, 33:15-22.*

67. McDermott's alleged emotional distress was caused by, according to his own words, the foreclosures as to the two condominium units; there is no evidence that McDermott's alleged emotional distress was caused by any act or omission on the part of MEEB. *Tr. V 76:17-77:14, 89:4-8, 90:19-21.*

68. McDermott had been prescribed medications, including valium, for depression as early as September 2003, well prior to any involvement with MEEB. *Tr. V 90:9-17, 91:21-24, 92:2-7.*

69. There is insufficient evidence that McDermott's visit to Union Hospital, allegedly due to fear of an alleged heart attack, was due to any act or omission on the part of MEEB. *Tr. IV 32:14-33:4.*

70. McDermott was unable to work from 2000 to 2005 due, according to his own words, to the fact that he was deeply depressed, which was prior to and wholly unrelated to the debt at issue and MEEB's collection efforts. *Tr. V 108:16-24.*

71.   McDermott stopped working at Testa Corp. due to alleged injuries he sustained in a motor vehicle accident. *Tr. IV 35:4-13, 36:3-21.*

72.   According to McDermott's own words, McDermott was not physically able to return to work due to injuries he sustained in a motor vehicle accident. *Tr. IV 36:16-21.*

### Law

1.   Pursuant to M.G.L. c. 183A, §6, an organization of condominium unit owners, such as Pondview, "shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due." M.G.L. c. 183A, §6(a).

2.   "If any expense is incurred by the organization of unit owners as a result of the unit owners' failure to abide by the requirements of this chapter or the requirements of the master deed, trust, by-laws, restrictions, rules or regulations, . . . the organization of unit owners may assess that expense exclusively against the unit owner and such assessment shall constitute a lien against that unit from the time the assessment is due, and such assessment shall be enforceable as a common expense assessment [under Chapter 183A]." M.G.L. c. 183A, §6(a)(ii).

3.   "The organization of unit owners may also assess any fees, attorneys' fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest charged pursuant to this chapter against the unit owner and such assessment shall constitute a lien against the unit from the time the assessment is due, and shall be enforceable as common expense assessments [under Chapter 183A]." M.G.L. c. 183A, §6(a)(ii).

4.   "The unit owner shall be personally liable for all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the

organization of unit owners and all costs of collection including attorneys' fees, costs, and charges." M.G.L. c. 183A, §6(b).

5.  Legal fees incurred by Pondview in its collection efforts were automatically assessed, as of the time incurred, to the delinquent unit owner, i.e., McDermott. See M.G.L. c. 183, §6(a)(ii).

6.  McDermott could not challenge the common expense assessments by self-help remedies, such as by refusing to pay the amounts due. Blood v. Edgar's, Inc., 36 Mass.App.Ct. 402 (1994).

7.  In order to prevail on his Fair Debt Collection Practices Act claim, McDermott was required to prove by a preponderance of the evidence: (1) McDermott was the object of collection activity arising from consumer debt; (2) MEEB was a debt collector as defined by the Fair Debt Collection Practices Act; and (3) MEEB engaged in an act or omission prohibited by the Fair Debt Collection Practices Act. Som v. Daniels Law Offices, P.C., 573 F.Supp.2d 349, 356 (D.Mass. 2008).

8.  McDermott's claims under the FDCPA which are based upon conduct which occurred prior to February 3, 2008, are barred by the jurisdictional, one-year statute of limitations contained within the FDCPA. 15 U.S.C. §1692k(d). See Alger v. Ganick, O'Brien & Sarin, 35 F.Supp.2d 148, 150 (D.Mass. 1999). Almost all the evidence at trial related to a time period prior to February 3, 2008, most notably the alleged phone conversation of May 9, 2005.

9.  Given that as a matter of sovereignty a state's statute of limitations cannot "trump a more restrictive limitations period set out in a federal statute creating a federal cause of action," McDermott cannot recover under M.G.L. c. 93A for violations of the FDCPA based upon

conduct occurring prior to February 3, 2008. See Crooker v. Wachovia Bank, N.A., 2008 WL 2066943, *1 n. 4 (D.Mass. 2008), citing Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG, 510 F.3d 77, 86-87 (1st Cir. 2007).

10.  MEEB, in its representation of Pondview, was authorized to collect any amount, including any interest, fee, charge, or expense incidental to the principal obligation, which was expressly authorized by the agreement creating the delinquency or which was permitted by law. 15 U.S.C. §1692f(1). See also Shapiro v. Riddle & Associates, P.C., 351 F.3d 63, 64 (2d Cir. 2003). The delinquencies at issue were authorized both by law and the underlying condominium documents.

11.  MEEB complied with the requirement of the FDCPA which provides that, within five days after the initial communication with the consumer in connection with the collection of a debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. MEEB

was authorized to continue its collection activities and communications during the foregoing thirty day period given that McDermott did not notify MEEB, in writing, that the debt, or any portion of the debt, was disputed nor did McDermott request the name and address of the original creditor. 15 U.S.C. §1692g(a), (b).

12.   Enforcement of a security interest, such as the lien established by M.G.L. c. 183A, does not qualify as debt collection activity under the FDCPA, except for the purposes of 15 U.S.C. §1692f(6), a provision which has not been relied upon by McDermott; as such, MEEB was not acting as a debt collector under the FDCPA. See Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 460 (11th Cir. 2009); Kaltenbach v. Richards, 464 F.3d 524, 527 (5th Cir. 2006); Montgomery v. Huntington Bank, 346 F.3d 693, 700-701 (6th Cir. 2003); Beadle v. Haughey, 2005 WL 300060 (D.N.H. 2005). See also 15 U.S.C. §1692a(6).

13.   In light of the statutory lien established by M.G.L. c. 183A, condominium assessments do not constitute debts for purposes of the FDCPA and, as such, MEEB was not acting as a debt collector for purposes of the FDCPA. See Azar v. Hayter, 874 F.Supp. 1314, 1318 (N.D. Fla. 1995), aff'd 66 F.3d 342 (11th Cir. 1995) ("Such fees arise by contract with the purchase of real estate in this form, are assessed on a regular basis, and, like rent, do not reflect deferred payments on a prior debt.").

14.   The common expenses which McDermott owed relative to the rental unit constituted commercial, as opposed to personal or consumer, debts and, as such, McDermott's claims relative to the rental unit (Unit 105) do not fall within the FDCPA. Bloom v. I.C. System, Inc., 972 F.2d 1067, 1068 (9th Cir. 1992). See 15 U.S.C. §1692a.

15.   The Massachusetts litigation privilege operates to protect MEEB from all liability under

M.G.L. c. 93A with regard to its collection activities on behalf of Pondview. <u>See</u>

<u>Blanchette v. Cataldo</u>, 734 F.2d 869, 877 (1st Cir. 1984) (statements of attorney

absolutely privileged where made "in the institution or conduct of litigation or in

conferences and other communications preliminary to litigation"; attorney's motive is

irrelevant); <u>Davidson v. Cao</u>, 211 F.Supp.2d 264, 275 (D.Mass. 2002); <u>Alger</u>, 35

F.Supp.2d at 158; <u>U.S. v. Rockland Trust Co.</u>, 860 F.Supp. 895, 902-903 (D.Mass. 1994);

<u>Doe v. Nutter, McClennen & Fish</u>, 41 Mass.App.Ct. 137, 140 (1996).

16.   The conduct on the part of MEEB which McDermott claims was a violation of the

FDCPA and M.G.L. c. 93A, relative to collecting delinquent condominium common

expense assessments, was authorized by, and in accordance with, the underlying

condominium documents and applicable law. 15 U.S.C. §1692f(1). <u>See</u> M.G.L. c. 183A,

§6.

17.   MEEB was not required to independently investigate and verify the validity of the

amounts owed by McDermott. <u>Owen v. I.C. System, Inc.</u>, 2011 WL 43525, *10 (11th

Cir. 2011); <u>Hyman v. Tate</u>, 362 F.3d 965, 968 (7th Cir. 2004); <u>Smith v. Transworld Sys.

Inc.</u>, 953 F.2d 1025, 1032 (6th Cir. 1992).

18.   The communications MEEB directed to McDermott, which were required by state law

(M.G.L. c. 183A), did not violate 15 U.S.C. §1692c(a)(2). <u>See</u> <u>Vitullo v. Mancini</u>, 684

F.Supp. 2d 747, 758 (E.D.Va. 2010) ("FDCPA's cease communications provisions are

not violated where a communication is sent directly to the debtor as required by state

law"); <u>Resler v. Messerli & Kramer, P.A.</u>, 2003 WL 193498, *4 (D.Minn. 2003).

19. Even if MEEB was aware that McDermott was represented by counsel, the FDCPA cease communications provisions were not violated because MEEB's notices to McDermott were required to be sent by state law. Hulse v. Ocwen Fed. Bank, 195 F.Supp.2d 1188, 1210-11 (D.Or. 2002).

20. MEEB's communications with McDermott's mortgagees, which were in compliance with M.G.L. c. 183A, did not violate 15 U.S.C. §1692c(b). See Resler v. Messerli & Kramer, P.A., 2003 WL 193498, *4 (D.Minn. 2003).

21. The statutory notices to mortgagees which are required pursuant to M.G.L. c. 183A are only required where "the first mortgagee has informed the organization of unit owners of its name and mailing address." M.G.L. c. 183A, §6(c). There was no evidence at trial that the mortgagees ever so informed the organization of unit owners or MEEB. See M.G.L. c. 183A, §4(5) ("Each mortgagee holding a recorded mortgage upon a unit shall give written notice of the mortgagee's name and mailing address to the organization of unit owners. Thereafter, each mortgagee shall provide written notice to the organization of any changes in said name and address for the purpose of providing notice to the mortgagee *under this chapter* . . ..") (emphasis added).

22. MEEB provided statements of the amounts due to McDermott's mortgagees pursuant to M.G.L. c. 183A, §6(c).

23. The lien established under M.G.L. c. 183A is to be "enforced by a civil action brought in a superior court for the county where such land lies or in the district court in the judicial district where such land lies." M.G.L. c. 254, §5.

24. The notices pursuant to M.G.L. c. 183A that MEEB sent to McDermott did not violate the FDCPA as they tracked the "safe harbor" language of the form letter recommended

by the 7th Circuit. Bartlett v. Heibl, 128 F.3d 497, 501-502 (7th Cir. 1997). See also *Tr. IV 43:3-17, 45:24-47:7.*

25. The accruing monthly arrearages owed by McDermott did not constitute "multiple debts" for purposes of 15 U.S.C. §1692h; all of the outstanding monies owed by McDermott as to a particular unit constituted a single "debt" for purposes of the FDCPA. As such, McDermott's claim that he disputed a portion of the "debt" (which claim was not credible) is not relevant and, even if credited, does not establish a violation of 1629h. See Dowling v. Litton Loan Servicing, LP, 2006 WL 3498292, *10 (S.D.Ohio 2006).

26. The objective "least sophisticated debtor" would not have found the notices sent by MEEB to McDermott improperly threatening or misleading. See Waters v. Kream, ___ F.Supp.2d___, 2011 WL 899361, *2 (D.Mass. 2011); Martin v. Sands, 62 F.Supp.2d 196, 199 (D.Mass. 1999).

27. MEEB did not engage in conduct or communications which contradicted or "overshadowed" the required notices to McDermott under the FDCPA. 15 U.S.C. §1692g. See Heibl, 128 F.3d at 501-502.

28. MEEB made no false or misleading material statements to McDermott relative to its collection efforts. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010); Hahn v. Triumph Partnerships, LLC, 557 F.3d 755, 757-758 (7th Cir. 2009); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009).

29. McDermott failed to prove that any of MEEB's communications to McDermott contained misleading statements that frustrated McDermott's ability to intelligently choose his response to the outstanding common expense assessements. Donohue v. Quick Collect,

Inc., 592 F.3d 1027, 1034 (9th Cir. 2010); Hahn v. Triumph Partnerships, LLC, 557 F.3d 755, 757 (7th Cir. 2009).

30.   McDermott, as the hypothetical, least sophisticated consumer, is presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005); United States v. National Financial Services, Inc., 98 F.3d 131, 135-136 (4th Cir. 1996). See Waters, 2011 WL 899361, *2.

31.   McDermott's bizarre and idiosyncratic interpretations of the collection notices sent by MEEB do not form the basis for a claim under the FDCPA. Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010); Waters, 2011 WL 899361, *2.

32.   MEEB's collection notices must be examined as a whole, not sentence-by-sentence, because the least sophisticated consumer standard does not go so far as to provide solace to the willfully blind or non-observant. Vitullo v. Mancini, 2010 WL 331761, *5 (E.D.Va. 2010).

33.   MEEB was not required to provide detailed or continuing disclosure to McDermott concerning the subject common expense assessments. See Newman v. Ormond, 396 Fed.Appx. 636, 640 (11th Cir. 2010) ("nothing in the FDCPA requires detailed or continuing disclosure by a debt collector").

34.   MEEB communicated with third parties, including McDermott's mortgagees, in connection with collection of the delinquent condominium common expense assessments, with the prior consent of McDermott, in light of the requirements of M.G.L. c. 183A. 15 U.S.C. §1692c(b).

35. MEEB's notices to McDermott were not misleading as they expressly stated that the amount owed may vary based on additional interest, late charges, and collection costs, and no misrepresentation occurred simply because the amount listed in the notices may have ultimately differed from the amount ultimately sought in settlement and/or judgment. Newman v. Ormond, 396 Fed.Appx. 636, 639 (11th Cir. 2010).

36. MEEB did not determine the allocation of the payments made by, or on behalf of, McDermott. 15 U.S.C. §1692h.

37. MEEB's communications to McDermott complied with the FDCPA by stating the amount owed as of the date of each respective communication. 15 U.S.C. §1692g(a)(1); Magee v. Allianceone, Ltd., 487 F.Supp.2d 1024, 1028 (S.D.Ind. 2007).

38. The complaints filed by MEEB in connection with its collection efforts on behalf of Pondview did not constitute "communications" for purposes of the FDCPA. See F.T.C., Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collections Act, 53 Fed.Reg. 50097, 50100 (Dec. 13, 1988) ("filing or service of a complaint or other legal paper . . . is not a 'communication' covered by the FDCPA"). See also Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir. 2007) ("it is far from clear that the FDCPA controls the contents of pleadings filed in state court").

39. The complaints filed by MEEB were not false, misleading, deceptive, or otherwise violative of the FDCPA. 15 U.S.C. §1692b; Beler, 480 F.3d. at 473.

40. The use of "delinquency" in the complaints which MEEB filed on behalf of Pondview recited the language of M.G.L. c. 183A, §6(c), stating that the required notice of the amount of the delinquency had been provided. See Tr. II 69:23-71:13.

20

41. The Massachusetts Condominium Act allows an organization of unit owners to seek successive priority liens for common expenses and, as such, MEEB's filing of additional law suits against McDermott was proper. M.G.L. c. 183A, §6 (referencing "priority liens"). See also Griffin v. Blair, Suffolk Superior Court Civil Action 97-4181 (Dec. 9, 1998) ("There is nothing contained in the language of Chapter 183A to indicate that the condominium association is prohibited from filing cumulative actions.").

42. In order to be actionable under the FDCPA, communications from a debt collector must be directed to the consumer and not a third party or state court. See O'Rourke v. Palisades Acquisition XVI, LLC, _ F.3d _, 2011 WL 905815, *5 (7th Cir. 2011). As such, McDermott is not aided by his reference to MEEB's communications with McDermott's mortgagees or filings with the state court.

43. MEEB maintained procedures reasonably adapted to avoid errors relative to its collection efforts on behalf of Pondview. 15 U.S.C. §1692k(c).

44. Any errors made relative to the notices and communications sent by MEEB to McDermott constitute qualifying factual or clerical errors for purposes of the bona fide error defense contained within the FDCPA. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA, 130 S.Ct. 1605, 1620-1621 (2010).

45. Any factual or clerical errors made by MEEB were "bona fide" as they were made in good faith. Gathuru v. Credit Control Services, Inc., 623 F.Supp.2d 113, 122 (D.Mass. 2009).

46. M.G.L. c. 93A is not applicable to MEEB's efforts, on behalf of Pondview, to collect delinquent condominium common expense assessments. Berish v. Bornstein, 437 Mass. 252, 274 (2002) ("G.L. c. 93A is inapplicable to a private dispute between a

condominium unit owner's association and a member of that association for failure to pay condominium fees"); Kurker v. Hill, 44 Mass.App.Ct. 184, 190-191 (1998) (c. 93A claim against attorneys for allegedly providing assistance to clients in what was "principally a private grievance" was outside the "conduct of any trade or commerce" within the meaning of c. 93A).

47. MEEB was not engaged in trade or commerce with McDermott, an adversary of MEEB's client, for purposes of c. 93A and, as such, McDermott cannot recover under the Massachusetts Consumer Protection Act. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462 (1997).

48. In support of his Chapter 93A claim, McDermott failed to establish that MEEB engaged in conduct which was "immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness." Harrington v. CACV of Colorado, LLC, 508 F.Supp.2d 128, 137 (D.Mass. 2007). See also Meyer v. Wagner, 429 Mass. 410, 423 (1999).

49. If there was any violation of the FDCPA on the part of MEEB, the violation was trivial and McDermott's damages, as such, zero. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA, 130 S.Ct. 1605, 1620-1621 (2010).

50. There is a legally insufficient evidentiary basis from which to conclude that McDermott suffered an actual injury pursuant to c. 93A and that such injury was caused by MEEB. Gathuru v. Credit Control Services, Inc., 623 F.Supp.2d 113, 123 n. 18 (D.Mass. 2009).

51. The fees paid to MEEB by third parties do not constitute "actual damages" to McDermott under either the FDCPA or M.G.L. c. 93A. 15 U.S.C. §1692k(a)(1); M.G.L. c. 93A, §9(3).

52. McDermott has failed to establish that he sustained actual damages as a result of any specific violation of the FDCPA or as a result of a violation of M.G.L. c. 93A. 15 U.S.C. §1692k; McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 561 (1996). See also Martin v. Select Portfolio Serving Holding Corp., 2008 WL 618788, *7 (S.D.Ohio 2008) (plaintiff failed to prove actual damages proximately caused by violation of FDCPA).

53. McDermott sustained no causally related loss that was "reasonably foreseeable" to MEEB. International Totalizing, Sys. Inc. v. Pepsi Co., Inc., 29 Mass.App.Ct. 424, 436 n. 18 (1990).

54. In order to be compensable, emotional distress damages must be proven to arise from a specific violation of the FDCPA. See Smith v. Law Offices of Mitchell and Key, 124 B.R. 182, 188 (D.Del. 1991). McDermott failed to make the necessary showing in this regard.

55. "When an injured party provides the only evidence of emotional distress, [he] must reasonably and sufficiently explain the circumstances of the injury, and not rely on mere conclusory statements." See Fields v. Trans Union LLC, 2002 WL 849589, *6 (N.D.Ill. 2002).

56. A plaintiff seeking recovery of emotional distress damages under the FDCPA "must demonstrate more than transitory symptoms of emotional distress and unsupported self-serving testimony by a plaintiff is not sufficient." See Costa v. National Action Fin. Sfcs., 633 F.Supp.2d 1069, 1078 (E.D.Cal. 2007). McDermott introduced no medical evidence, e.g., expert testimony or medical records, in support of his emotional distress claim.

57.  McDermott failed to plead unjust enrichment either as a claim or theory of recovery. Additionally, given that McDermott had an adequate remedy at law, unjust enrichment is unavailable to McDermott. See Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331, *1 (D.Mass. 2005); In re Lupron Marketing and Sales Practices Litigation, 295 F.Supp.2d 148, 182, (D.Mass. 2003).

58.  McDermott conferred no benefit upon MEEB and, as such, unjust enrichment and/or disgorgement is unavailable. In re Lupron, 295 F.Supp.2d at 182.

59.  Unjust enrichment is unavailable either as a claim or theory of recovery, under either the FDCPA or c. 93A, as McDermott has not proved the elements of a claim for intentional interference with contractual relations (which was not pled) or the existence of a special or fiduciary relationship between McDermott and MEEB. See National Merchandise Corp. v. Leyden, 370 Mass. 425 (1976). Moreover, "disgorgement" is not among the remedies provided in the FDCPA. 15 U.S.C. §1692k(a)(1-3).

60.  McDermott's claimed damages are speculative and were not proven with reasonable certainty. See Milone v. Moceri Family, Inc., 847 F.2d 35, 38-39 (1st Cir. 1988); Lufkin's Realty, Inc. v. Aseph, 349 Mass. 343, 346 (1965).

61.  McDermott's claimed damages were avoidable by the use of reasonable precautions on his part, i.e., he could have paid the delinquent condominium common expense assessments and then challenged same. Noble v. Corporacion Insular De Seguros, 738 F.2d 51, 54 (1st Cir. 1984); John S. Doane Co. v. Martin, 164 F.2d 537, 541 (1st Cir. 1947); Global Investors Agent Corporation v. National Fire Ins. Co., 76 Mass.App.Ct. 812, 825 (2010). See Blood, 36 Mass.App.Ct. at 421-422.

62.  McDermott failed to establish that MEEB violated the FDCPA or M.G.L. c. 93A.

63.	As the c. 93A claims were predicted on the putative violations of the FDCPA, since there

	was no underlying violations of the latter, there was no unfair or deceptive act or practice

	in violation of the former. <u>Waters</u>, 2011 WL 899361, *3.

### Conclusion

Judgment should enter in favor of Marcus, Errico, Emmer & Brooks, P.C. as to the

claims of the Plaintiff William M. McDermott, and Marcus, Errico, Emmer & Brooks, P.C.

should be awarded costs pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. §1920.

Respectfully submitted,
Defendant Marcus, Errico, Emmer & Brooks, P.C.,
By its attorneys,

*/s/ J. William Chamberlain, Jr.*
Stephen J. Duggan, BBO # 137610
SDuggan@lynchlynch.com
J. William Chamberlain, Jr., BBO # 632784
BChamberlain@lynchlynch.com
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375
508-230-2500

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and complete copy of the foregoing document
(*Marcus, Errico, Emmer & Brooks, P.C.'s Post-Trial Brief*) was filed through the Court's ECF
filing system on this 9th day of <u>May, 2011</u> and all counsel of record will receive notice of same
through the Court's ECF filing system.

*/s/ J. William Chamberlain, Jr.*
J. William Chamberlain, Jr.