UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM M. MCDERMOTT,
        Plaintiff,


        v.                                      CIVIL ACTION NO.
                                                09-10159-MBB

MARCUS, ERRICO, EMMER & BROOKS, P.C.,
        Defendant.



**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION UNDER RULE 59(E) TO AMEND THE**
**JUDGMENT RELATIVE TO THE FINDINGS AND RULINGS**
**CONCERNING THE PRE-SUIT NOTICES UNDER G.L.C.**
**183A, § 6(C) (DOCKET ENTRY # 66); MOTION OF**
**THE DEFENDANT, MARCUS, ERRICO, EMMER & BROOKS,**
**P.C., FOR RECONSIDERATION AND/OR TO**
**ALTER AND AMEND JUDGMENT**
**(DOCKET ENTRY # 68)**

**August 26, 2013**


**BOWLER, U.S.M.J.**

        After a six day non-jury trial, this court issued findings

and conclusions under Rule 52(a), Fed. R. Civ. P., (Docket Entry

# 63) and a final judgment (Docket Entry # 64).  Both parties

filed timely motions to alter or amend the judgment under Rule

59(e), Fed. R. Civ. P. ("Rule 59(e)").  (Docket Entry ## 66 &

68).  After conducting a hearing, this court took the motions

under advisement.

        The two count complaint sets out violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 ("section

1692") in Count One and section nine of Massachusetts General Laws chapter 93A ("chapter 93A") in Count Two.  Although the multitude of alleged FDCPA violations required extensive findings and conclusions, plaintiff William M. McDermott ("plaintiff") eventually recovered $800.00 in statutory damages under Count One and $10,400.00 in damages under Count Two including prejudgment interest in the amount of $4,649.00.[1]

In seeking Rule 59(e) relief, defendant Marcus, Errico, Emmer & Brooks, P.C. ("MEEB") requests reconsideration of the chapter 93A "trade or commerce" determination.  It also argues that the untimely conduct under the FDCPA's one year limitations period cannot serve as a predicate for a per se violation of chapter 93A.  MEEB further seeks reconsideration of the determination that per se chapter 93A violations are not protected by the litigation privilege.  MEEB maintains that the litigation privilege is absolute and bars any liability under chapter 93A.  As to the FDCPA, MEEB challenges the determinations that it violated section 1692i by filing suit in the wrong venue and section 1692c(b) by sending letters (Ex. 38, 42, 45, 47, 55, 59, 60 & 68) to plaintiff as opposed to his attorney.  (Docket Entry # 74).

Plaintiff urges reconsideration of the finding that MEEB did not violate section 6(c) of Massachusetts General Laws chapter

---

[1]  The amount of attorneys' fees remains outstanding.

183A ("chapter 183A"), the state condominium statute, when it failed to send notice of its intent to file suit at least 30 days in advance of filing suit to plaintiff's mortgagees.  (Docket Entry # 67).  Plaintiff asserts that this court erroneously determined that MEEB's failure to provide the mortgagees with a letter 30 days before filing suit did not violate either section 1692f or section 1692d.  Finally, plaintiff argues that he suffered actual damages in the form of increased attorneys' fees and costs as a result of MEEB's failure to notify the mortgagees 30 days in advance of filing suit.

BACKGROUND[2]

Plaintiff, a resident of the Pondview condominiums in Lynn, Massachusetts, filed this action alleging improper debt collection activities on two residential condominium units at the 19 unit complex against MEEB, a professional corporation of attorneys located in Braintree, Massachusetts.  Plaintiff, plaintiff's brother and/or plaintiff's parents owned the units at various times and, except for a one year period, plaintiff resided in one of the units.[3]  Throughout the relevant time

---

[2]  Familiarity with the facts, detailed in the November 2012 Memorandum and Order (Docket Entry # 63, pp. 3-65), is presumed. For present purposes, this court highlights a few of the relevant findings.

[3]  The units are unit 104 and unit 105.  Plaintiff was the borrower in the March 2003 and April 2005 mortgages on the units.

period, MEEB represented the Pondview Condominium Trust
("Pondview") in its efforts to collect monies plaintiff owed for
unpaid condominium assessments, loan payback charges,[4] collection
costs, including MEEB's attorneys' fees, and late fees.

Created under a September 1986 Declaration of Trust (Ex. B),
Pondview is the governing body of the Pondview condominiums and
consists of a group of volunteer trustees.  The Declaration of
Trust states that the trustees must be unit owners.  (Ex. B).

The Declaration of Trust gives the trustees the authority to
determine the assessment for each fiscal year and the unit
owners' "respective shares of such assessment, according to their
percentages of interest in the common areas and facilities."[5]
(Ex. B, Art. V, § 5.3(B)).  The Declaration of Trust allows for
monthly payment of the assessment and, "[i]f not paid when due,
the amount . . . shall constitute a lien on the unit."  (Ex. B,
Art. V, § 5.3(B)).[6]  The Master Deed likewise provides that:

––––––––––––

[4]   The loan payback charge was either part of a special
assessment or a line item in Pondview's budget.

[5]   Chapter 183A requires Pondview to assess the common
expenses "against all units in accordance with their respective
percentages of undivided interest in the common areas and
facilities."  Mass. Gen. L. ch. 183A, § 6(a)(i).

[6]   Chapter 183A similarly allows Pondview to assess an
unpaid expense incurred by Pondview because of a unit owner's
failure to abide by the requirements of chapter 183A or a master
deed or trust "against the unit owner and such assessment shall
constitute a lien against the unit . . .."  Mass. Gen. L. ch.
183A, § 6(a)(ii).

> The Trustees in their discretion may enforce collection of
> unpaid assessments for common expenses plus interest thereof
> by enforcing the lien by a court action or by other lawful
> means on account of which there shall be added to the amount
> due and payable the reasonable costs of such collection
> including reasonable attorney fees.

(Ex. B, Art. V, § 5.3(C)).

In addition, the Master Deed submitted Pondview to the "provisions of Chapter 183A." (Ex. C, p. 1); see Mass. Gen. L. ch. 183A, § 1 (defining "Master deed" as "the instrument by which the condominium is submitted to the provisions of this chapter"). The Declaration of Trust similarly grants the trustees the power "to exercise all of the powers of the 'organization of unit owners' pursuant to Massachusetts General Laws, Chapter 183A." (Ex. B, Art. III, § 3.6). Under section six of chapter 183A, "The organization of unit owners may . . . assess any fees, attorneys' fees [and] late charges . . . against the unit owner." Mass. Gen. L. ch. 183A, § 6(a)(ii). In short, under chapter 183A, the Declaration of Trust and the Master Deed, Pondview had the ability and the authority to assess condominium fees, attorneys' fees, late charges and costs of collection against a unit owner such as plaintiff. See Mass. Gen. L. ch. 183A, § 6(a)(ii) & 6(b); (Ex. B, Art. V, § 5.3(C)).

In July and August of 2004, plaintiff fell behind in paying his assessments, late fees and loan payback charges for both units. Pondview did not hire or engage MEEB as its attorney, however, until March 2005. MEEB's efforts to collect the debts

5

plaintiff owed to Pondview continued through the fall of 2008.
Plaintiff's failure to pay legitimately imposed charges led MEEB,
on behalf of its client Pondview, to file two collection suits
against plaintiff, as a unit owner, on April 28, 2005, in the
Massachusetts District Court Department (Lynn Division) ("Lynn
District Court").  MEEB filed these and an additional seven
collection suits in Lynn District Court except for the last
collection suit filed in September 2008 ("September 2008 unit 104
suit") in the Massachusetts Superior Court Department (Essex
County) ("Essex Superior Court").[7]

Beginning in May 2005, MEEB also communicated with
plaintiff's mortgagees without obtaining plaintiff's consent.
Section six of chapter 183A imposes a requirement on a
condominium association, such as Pondview, to send a letter to
the owner of a unit when any portion of a unit owner's share of
common expenses is delinquent for at least 60 days ("60 day
letter").  Section six also requires Pondview to send the first
mortgagee a 60 day letter and a notice 30 days in advance of
filing suit of its intention to file suit ("30 day notice
letter") "provided that the first mortgagee has informed the
condominium association of its name and mailing address."  Mass.
Gen. L. ch. 183A, § 6(c).

---

[7]  The complaint in this action summarily asserts that the
filing of the suit "in Essex Superior Court violated 15 U.S.C. §§
1692i."  (Docket Entry # 1, ¶ 35).

Plaintiff filed this suit on February 3, 2009.  The FDCPA has a one year statute of limitations.  15 U.S.C. § 1692k(d). The delay in filing suit sharply curtailed the timely FDCPA violations committed by MEEB.  In addition to a May 13, 2008 letter that violated section 1692c(b), this court found the following FDCPA timely violations:  (1) MEEB violated section 1692c(a)(2) by sending plaintiff, as opposed to his attorney, a 60 day letter dated June 30, 2008 (Ex. 50);[8] (2) MEEB violated section 1692c(a)(2) by sending plaintiff, as opposed to his attorney, a 60 day letter dated September 16, 2008 (Ex. 76);[9] and (3) MEEB violated section 1692i by filing the September 2008 unit 104 suit in Essex Superior Court.

This court also found that MEEB committed a number of FDCPA violations outside the one year limitations period.  These untimely FDCPA violations served as a basis for per se liability under chapter 93A.  Examining MEEB's conduct independent of per se liability, this court additionally determined that such

---

[8]  MEEB does not seek reconsideration of this finding.  The Rule 59(e) motion cites section 1692c(b), as opposed to section 1692c(a)(1), and it does not refer to or identify exhibit 50. Instead, the motion refers to the letters in "Exhibits 38, 42, 45, 47, 55, 59, 60, 68 and 69" and argues that these letters did not unlawfully disclose the debt to third parties in violation of section 1692c(b).  (Docket Entry # 69, § V).

[9]  For reasons stated in the previous footnote, MEEB does not seek reconsideration of this finding.  These two letters (Ex. 50 & 76) provided a basis for the statutory award of damages in the amount of $800.00.

conduct was neither unfair nor deceptive under chapter 93A.

### DISCUSSION

Both parties seek relief under Rule 59(e).  "[T]o prevail on a Rule 59(e) motion, the moving party 'must either clearly establish a manifest error of law or must present newly discovered evidence.'"  Markel American Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012); see Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008) (same); Kansky v. Coca-Cola Bottling Co. of New England, 492 F.3d 54, 60 (1st Cir. 2007) (same).  "[A]n 'intervening change' in the controlling law" also provides a basis for Rule 59(e) relief.  Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1, 9 (1st Cir. 2012); Moran Vega v. Cruz Burgos, 537 F.3d 14, 18 (1st Cir. 2008).  When successful, Rule 59(e) allows a court to reverse as well as to amend a prior judgment.  See National Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123-124 (1st Cir. 1990).

Rule 59(e) does not allow a party to raise an argument that could and should have been raised before a judgment issued. Markel American Ins. Co. v. Diaz-Santiago, 674 F.3d at 32 (Rule 59(e) does not permit litigant to present new arguments that "'could, and should, have been made before judgment issued'"); Fernandez-Vargas ex rel. C.J.P.F. v. Pfizer, 522 F.3d 55, 67 n.5 (1st Cir. 2008) (same); ACA Financial Guaranty Corp. v. Advest,

8

Inc., 512 F.3d 46, 55 (1st Cir. 2008) (same); cf.
Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 191 (1st Cir.
2004) (noting this "usual rule" but finding it did not apply to
default judgment).  Overall, whether to consider an argument
raised in a Rule 59(e) motion entails "balancing the need for
finality of judgments with the need to render a just decision."
Venegas-Hernandez v. Sonolux Records, 370 F.3d at 191.

I.   MEEB'S RULE 59(e) MOTION

     A.   Trade or Commerce

     MEEB seeks reconsideration of the entire chapter 93A award
because MEEB's relationship to plaintiff, as a litigation
opponent of MEEB's client, does not constitute "trade or
commerce" under section 2(a) of chapter 93A.  (Docket Entry #
69).  This court rejected the trade or commerce argument as well
as the litigation privilege argument.  (Docket Entry # 63, pp.
169-177).

     Section 2(a) prohibits "unfair or deceptive acts or
practices in the conduct of trade or commerce."  Mass. Gen. L.
ch. 93A, § 2(a).  Section 2(c) provides that, "The attorney
general may make rules and regulations interpreting the
provisions of subsection 2(a) of this chapter" and that, "Such
rules and regulations shall not be inconsistent with the rules,
regulations and decisions of the Federal Trade Commission . . .
as from time to time amended."  Mass. Gen. L. ch. 93A, § 2(c).

Exercising the power conferred in section 2(c), the Attorney General of the Commonwealth enacted 940 C.M.R. § 3.16 ("regulation 3.16").  The regulation broadly declares that:

> . . . an act or practice is a violation of M.G.L. c.93A, § 2 if:
>
> (1) It is oppressive or otherwise unconscionable in any respect; or
>
> (2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or
>
> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or
>
> (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2.

940 C.M.R. 3.16 (emphasis added).

Because of the breadth and reach of the language in regulation 3.16, this court rejected MEEB's argument that it was not engaged in trade or commerce.  (Docket Entry # 63, pp. 169-174).  This court reasoned that if an act violates regulation 3.16(4) by violating the FDCPA, see In re Pharmaceutical Industry Average Wholesale Price Litigation, 491 F.Supp.2d 20, 84 (D.Mass. 2007) ("[t]he types of federal statutes that courts have found to be consumer protection statutes under section 3.16(4) include" the FDCPA), the act automatically constitutes "unfair or

deceptive acts or practices in the conduct of trade or commerce."
Mass. Gen. L. ch. 93A, § 2(a).  Thus, because the regulation did
not require a "trade or commerce" showing and it globally
declared that the act was a violation of section two, a showing
of "trade or commerce" was not required.

    After the Memorandum and Order issued and after the parties
filed the Rule 59(e) motions, the Massachusetts Supreme Judicial
Court issued an opinion rejecting this view.  <u>Klairmont v.
Gainsboro Restaurant, Inc.</u>, 987 N.E.2d 1247, 1255 (Mass. 2013).
The May 16, 2013 decision held that regulation 3.16(3), which has
language similar to regulation 3.16(4) except that the violation
is based on Massachusetts as opposed to federal consumer
protection law, is subject to a trade or commerce determination.
<u>Id.</u> (violation of state building code was not a per se violation
of chapter 93A unless "the conduct leading to the violation is
both unfair or deceptive and occurs in trade or commerce").  The
decision reads, in pertinent part, as follows:

> Section 2 (a) of c. 93A proscribes "unfair or deceptive acts
> or practices in the conduct of trade or commerce."  Although
> the language of 940 Code Mass. Regs. § 3.16(3) is
> unquestionably broad, by its terms it imposes the
> substantive limitation that the law or regulation at issue
> must be intended to protect consumers, and we further read
> the regulation as being bound by the scope of c. 93A, § 2
> (a).  In other words, under 940 Code Mass. Regs. § 3.16(3) a
> violation of a law or regulation, including a violation of
> the building code, will be a violation of c. 93A, § 2 (a),
> *only if the conduct leading to the violation is both unfair*
> *or deceptive and occurs in trade or commerce.*

Id. (emphasis added).[10]  This intervening change in the
controlling law provides a basis for Rule 59(e) relief.
Alternatively, it was a manifest error of law under Rule 59(e) to
find that the untimely FDCPA violations were per se violations of
chapter 93A without regard to whether MEEB was engaged in trade
or commerce under section 2(a).

It is therefore necessary to examine whether the conduct by
MEEB that led to the untimely FDCPA violations and per se chapter
93A liability took place in "trade or commerce."[11]  Ordinarily,
"the proper party to assert a c. 93A claim against an attorney is
a client or someone acting on a client's behalf."  Tetrault v.
Mahoney, Hawkes & Goldings, 681 N.E.2d 1189, 1195 (Mass. 1997)
(citing case law indicating that the client is the proper party).
Where, as here, the client (Pondview) is not asserting the

_____

[10]  To the extent the Andrews decision concludes otherwise,
see Andrews v. South Coast Legal Services, Inc., 582 F.Supp.2d
82, 89-90 (D.Mass. 2008), a decision by the Massachusetts Supreme
Court takes precedence over a decision by a federal district
court in deciding issues of state substantive law.  See Dykes v.
DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998).  The federal
district court cases cited by plaintiff (Docket Entry # 73, p. 5)
are distinguishable on this basis.  They all involve violations
of the FDCPA as creating per se chapter 93A liability without
regard to a trade or commerce determination.  Klairmont teaches
otherwise.  Klairmont v. Gainsboro Restaurant, Inc., 987 N.E.2d
at 1255.

[11]  As set out in the Memorandum and Order, there was no
unfair or deceptive conduct with respect to the timely FDCPA
conduct or an independent violation of chapter 93A outside the
context of the per se liability based on the untimely FDCPA
violations.

chapter 93A claim, the attorney "must have been acting in a business context."  Id. (citing First Enterprises, Ltd. v. Cooper, 680 N.E.2d 1163, 1165-1166 (Mass. 1997)); Miller v. Mooney, 725 N.E.2d 545, 551 (Mass. 2000) ("[a]s nonclients [the plaintiffs] must show the defendant was acting in a business context"); Akar v. Federal National Mortgage Association, 843 F.Supp.2d 154, 170 (D.Mass. 2012) ("'[c]hapter 93A claims can be brought against an attorney or a law firm,' but only when the attorney or law firm is 'acting in a business context vis-a-vis the plaintiffs'").

Section one of chapter 93A defines "trade" and "commerce" to "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed" as well as any "contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."  Mass. Gen. L. ch. 93A, § 1(b); see also Riseman v. Orion Research Inc., 475 N.E.2d 398, 399 (Mass. 1985) ("definition of 'trade' and 'commerce' . . . is open-ended to a considerable degree because, although it states certain activities that are included, it does not exclude other activities").  "[U]se of the words 'distribution of any services' in conjunction with words such as

13

'sale' and 'lease' indicates an intent that the services be distributed in exchange for some consideration or that there must be other strong indications that the services are distributed in a business context." Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 498 N.E.2d 1044, 1051-1052 (Mass. 1986).

Interpreting section two and whether a party is engaging in trade or commerce by acting in a business context "depends on a number of factors including:  'the nature of the transaction, the character of the parties involved, and [their] activities . . . and whether the transaction [was] motivated by business or personal reasons.'" Peabody N.E., Inc. v. Town of Marshfield, 689 N.E.2d 774, 778 & n.6 (Mass. 1998) (interpreting section 2(a)).  The inquiry also entails factual determinations on the part of this court as the finder of fact.  See Feeney v. Dell Inc., 908 N.E.2d 753, 770 (Mass. 2009) ("'[t]rade or commerce' refers to transactions in a 'business context,' which, in turn, is 'determined by the facts of each case'").

The underlying dispute in the case at bar is a private dispute between volunteer members of a condominium association and a condominium owner who failed to pay assessments and related charges.  See Berish v. Bornstein, 770 N.E.2d 961, 979 (Mass. 2002) (statute "is inapplicable to a private dispute between a condominium unit owners' association and a member of that

association for failure to pay condominium fees"); Office One, Inc. v. Lopez, 769 N.E.2d 749, 759 (Mass. 2002).[12] Pondview then hired MEEB to enforce this purely private transaction.

Although the scale of MEEB's representation of condominium associations is large, it did not inject itself into the external marketplace in the course of its efforts to collect monies owed to its client, Pondview. See First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1165. Throughout, MEEB's statements to plaintiff and others were made to serve the interests of its client, Pondview.[13] See First Enterprises, Ltd. v. Cooper, 680 N.E.2d at 1165-1166 (attorney's "statements were not made to influence an external marketplace but rather to secure for his client a lump-sum payment for his client's shares in the plaintiffs' business"). The nature of the relationship between MEEB and plaintiff is that of adversaries on opposite sides of a dispute that lead to multiple lawsuits. See Akar v. Federal National Mortgage Association, 843 F.Supp.2d at 171 (finding no trade or commerce because "'only contact between the parties was on

---

[12] This court previously distinguished Berish and Office One because they did not involve per se chapter 93A violations based on the FDCPA. (Docket Entry # 63, p. 170). In light of Klairmont, this reasoning no longer applies.

[13] This court disagrees with plaintiff's assessments of the facts in terms of MEEB's motives and desires to act on behalf of its client.

opposing sides of a dispute' involving the foreclosure of Akar's property by Harmon's client, Wells Fargo"); Altschuler v. Lamond, 2006 WL 2588148, *2 (Mass.App.Div. Sept. 6, 2006) (when conduct "occurs among adversaries embroiled in litigation, it is not generally deemed to have been perpetrated in a business context" and person is thereby not engaged in trade or commerce). Moreover, "'The mere filing of litigation does not of itself constitute "trade or commerce."'" Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 260 (Mass. 2008); see also Kurker v. Hill, 689 N.E.2d 833, 838 (Mass.App.Ct. 1998) (minority shareholders claim against majority shareholders' attorneys properly dismissed because it was not "the conduct of any trade or commerce" under chapter 93A, section 11).

Here, MEEB filed the lawsuits to collect monies owed to and incurred by Pondview as a result of plaintiff's delinquencies. MEEB's motives were not unduly influenced by the desire to increase its profits.  Contrary to plaintiff's view of the facts, this court finds that MEEB was not being deceitful, purposefully concealing its legal fees or its interactions with plaintiff's mortgagees or unduly or improperly focusing on the collection of its attorneys' fees to the exclusion of the interests of its client.  MEEB's motives were based on a desire to represent its client to the fullest extent possible in a vigorous and aggressive manner.  See also St. Paul Fire and Marine Insurance

Co. v. Ellis & Ellis, 262 F.3d 53, 67 (1st Cir. 2001)
(distinguishing between "vigorous advocacy in pursuit of" the
client's legal claim and the use of litigation to add a veneer of
legitimacy to a fraudulent scheme that affects trade or
commerce).

Under the facts, MEEB's acts and practices in violation of
the FDCPA were not made "in the conduct of any trade or commerce"
under section 2(a).  The 1986 amendment to the FDCPA repealing
the exemption for attorneys from the definition of a "debt
collector" does not alter this factual finding.  In reaching the
above conclusion, this court is not applying the litigation
privilege.[14]  Rather, it is applying the definition of trade or
commerce to the facts of this case.  Correcting the
aforementioned manifest error of law and in light of the
intervening change in the controlling law, MEEB is not liable
under chapter 93A given the absence of the required trade or
commerce under section 2(a).[15]  See generally Coons v. Industrial
Knife Co., Inc., 620 F.3d 38, 41 (1st Cir. 2010) ("'the entry of a
judgment against the party that was entitled to judgment as a

---

[14]   The Memorandum and Order addresses the litigation
privilege and the FDCPA's application to litigation activity.
(Docket Entry # 63, pp. 174-176).

[15]   It is therefore not necessary to address MEEB's
alternative challenges under Roman numerals II and III in the
supporting memorandum (Docket Entry # 69) to its liability under
chapter 93A.

matter of law—the predicate for granting a motion for judgment notwithstanding the verdict—could easily be thought a manifest error' that would justify amendment of the judgment under Rule 59(e)").

B. <u>FDCPA</u>

MEEB's challenges to the FDCPA violations found by this court are twofold.  First, on the basis of two arguments, it seeks reconsideration of the finding that MEEB violated section 1692i by filing the September 2008 unit 104 suit in Essex Superior Court.  (Docket Entry # 69, § IV).  Second, MEEB maintains that it did not unlawfully disclose the debt to third parties, i.e., plaintiff's mortgagees, in violation of section 1692c(b) because the debt was in the public record or previously disclosed by lawful means.  (Docket Entry # 69, § V).

1. <u>Section 1692i</u>

As noted, MEEB moves for reconsideration of the determination that it violated section 1692i by filing the September 2008 unit 104 suit in Essex Superior Court as opposed to Lynn District Court.  This court determined that MEEB violated section 1692i by not filing suit in Lynn District Court because Essex Superior Court was not located in the correct "judicial district or similar legal entity" within the meaning of section 1692i.  (Docket Entry # 63, pp. 164-167).

MEEB proffers two arguments in the Rule 59(e) motion.

First, it contends that plaintiff waived the issue of its
liability under section 1692i.  Second, MEEB asserts this court
erred by finding it liable.  Plaintiff does not address the
waiver argument.

Turning to the waiver argument, the "usual rule" is "that
parties cannot use Rule 59(e) motions to raise new arguments that
could have been made before judgment issued or to undo their own
procedural failures."  Venegas-Hernandez v. Sonolux Records, 370
F.3d at 190; accord ACA Financial Guaranty Corp. v. Advest, Inc.,
512 F.3d at 55; Fernandez-Vargas ex rel. C.J.P.F. v. Pfizer, 522
F.3d at 67 n.5.  MEEB did not raise the waiver argument in its
post trial brief (Docket Entry # 61).  The issue therefore arises
whether to consider the argument at this point in a Rule 59(e)
motion.  A number of reasons favor such consideration.

As explained by the First Circuit in Venegas-Hernandez, in
considering a Rule 59(e) motion, it is appropriate to balance the
need for the "finality of judgments with the need to render a
just decision."  Venegas-Hernandez v. Sonolux Records, 370 F.3d
at 190.  The court in Venegas-Hernandez allowed a Rule 59(e)
challenge to a default judgment by the defaulted party partly
because otherwise "a party in default would never be able, by
motion in the district court, to bring to that court's attention
an error of law in the default judgment."  Venegas-Hernandez v.
Sonolux Records, 370 F.3d at 189.  Here too, MEEB had no reason

19

to raise the waiver argument in the post trial brief.  Plaintiff only briefly mentioned the section 1692i liability in a sentence in paragraph 35 of the 80 paragraph complaint.[16]  Thereafter, in response to MEEB's proposed jury instruction on its section 1692i liability,[17] plaintiff unequivocally stated that the instruction was "*irrelevant*" and that, "*The plaintiff makes no claim that the defendant initiated a suit in the wrong court*."  (Docket Entry # 22-2, Proposed Instruction No. 24) (emphasis added).  During trial, plaintiff did not raise the issue of the filing in Essex Superior Court as opposed to Lynn District Court.  Without any discussion, the parties agreed to admit the September 2008 complaint filed in Essex Superior Court along with 29 other exhibits.  Plaintiff did not raise or address section 1692i liability in the post trial brief.  It was only after this court sua sponte raised the issue of MEEB's section 1692i liability in

---

[16]   Paragraph 35 reads:

35. From that time until September 19, 2008, Marcus, Errico, prepared, mailed and filed in Lynn District Court and Essex County Superior Court; mailed and recorded in the Essex County South Registry of Deeds in Salem, Massachusetts; and mailed to McDermott's mortgagees, eight additional Complaints and Statements and one Amended Complaint which contain the same or similar violations of 15 U.S.C. §§ 1692d, 1692e, and 1692f.  The Complaint in Essex Superior Court violated 15 U.S.C. §§ 1692i as well.

(Docket Entry # 1, ¶ 35).

[17]   The parties filed proposed instructions on the FDCPA claims in anticipation of a jury trial.  They agreed to waive a jury trial at a January 24, 2011 hearing.

the Memorandum and Order (Docket Entry # 63, pp. 164-167) that MEEB could reasonably foresee the need to address plaintiff's waiver of any such liability.  The customary circumstance in which a judge reviews a judgment under Rule 59(e) after both parties previously argued the points at issue does not apply.  See id. at 191.  Similar to the defaulting party in Venegas-Hernandez, the Rule 59(e) motion here was the first meaningful and logical opportunity MEEB had to raise the waiver issue and this court's error of not finding a waiver.  Under the circumstances, MEEB could not and should not have raised the waiver issue prior to this court's sua sponte consideration and resurrection of MEEB's section 1692i liability in the Memorandum and Order.

Second, addressing the waiver error at this point is more efficient than having MEEB appeal.  See id.  Thus, where, as here, the trial court is readily available to correct its own error, "no good purpose is served by requiring" MEEB to appeal to a higher court to be heard on the issue of plaintiff's waiver.  See id. (quoting Schildhaus v. Moe, 335 F.2d 529, 531 (2nd Cir. 1964), in parenthetical that, "'[T]here is indeed good sense in permitting the trial court to correct its own error and, if it refuses, in allowing a timely appeal from the refusal; no good purpose is served by requiring the parties to appeal to a higher court'").  The First Circuit in Venegas-Hernandez relied in part

on this reasoning to conclude that Rule 59(e) was available to challenge a default judgment based on a new argument not previously made.  The reasoning applies to the case at bar.

Third, like the plaintiff in Venegas-Hernandez, plaintiff waived the issue of the availability of Rule 59(e) as a means for MEEB to raise plaintiff's waiver of section 1692i liability for the first time.  See id. (proceeding to address Rule 59(e) error in part because the "plaintiffs have waived the issue of the availability of the Rule 59(e) motion to defendant").  Plaintiff did not address the waiver argument in opposing MEEB's Rule 59(e) motion.

Finally, the need for finality in judgments is not well served by avoiding and bypassing the issue of plaintiff's waiver. Instead, addressing the waiver issue serves to render a just decision by allowing MEEB the opportunity to be heard in light of the sua sponte and unforeseen consideration of section 1692i liability by this court.  See id. at 190 (noting trial court's discretion in deciding Rule 59(e) motions requires balancing "need for finality of judgments with the need to render a just decision").  Accordingly, this court turns to the existence of Rule 59(e) relief based on plaintiff's waiver of section 1692i liability and this court's error in considering such liability sua sponte without addressing or finding the section 1692i liability issue waived.

It is well settled that, "Simply mentioning a possible defense in an initial pleading, without further development in subsequent stages of the proceedings, does not preserve it for post-trial review." Bennett v. City of Holyoke, 362 F.3d 1, 6 (1st Cir. 2004); see Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir. 1995) ("[m]erely mentioning an issue in a pleading is insufficient to carry a party's burden actually to present a claim or defense to the district court before arguing the matter on appeal").  As explained in Bennett in deeming a notice defense waived:

> [T]he City did not rely upon this notice defense in the
> pretrial proceedings, at the trial itself, during the charge
> conference, or in its motion for judgment as a matter of
> law.  When a party persistently sleeps upon its rights,
> waiver *almost inevitably results* . . . By the time that the
> City advanced the defense for the first time in a post-trial
> motion for relief from judgment, it was too late.

Bennett v. City of Holyoke, 362 F.3d at 6 (flatly rejecting argument that reference to the notice defense in answer was sufficient) (citations omitted and emphasis supplied); see also Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 775 (1st Cir. 2010) (affirming trial court's finding waiver of claim due to failure to assert it in pretrial order notwithstanding a liability finding and damages award on the claim initially).

Here, plaintiff mentioned section 1962i liability in a single, short sentence in the complaint.[18]  Plaintiff expressly

---

[18]  See fn. 16.

disavowed such liability in the proposed jury instructions.  In no uncertain terms, plaintiff represented that he was not making a claim that MEEB filed suit in the wrong court and that MEEB's proposed instruction about what constitutes a "judicial district" within the meaning of section 1692i was "irrelevant."  (Docket Entry # 22-2, Proposed Instruction No. 24).  Plaintiff did not raise the issue of section 1692i liability and the filing of suit in the wrong "judicial district," i.e., Essex Superior Court, at trial or in the post trial brief.  The circumstances therefore inevitably and unerringly point to the existence of plaintiff's waiver.  Sua sponte consideration of this waived claim was not only an error, it was a manifest error of waiver law on the part of this court.[19]

    2.  Section 1692c(b)

    MEEB next seeks reconsideration of the finding that it violated section 1692c(b) and therefore chapter 93A by disclosing the debt to third parties by sending plaintiff, as opposed to his attorney, letters to plaintiff's mortgagees (Ex. 38, 42, 45, 47, 55, 59, 60, 68 & 69).  (Docket Entry # 74).  Plaintiff originally cited 17 exhibits (Ex. 17, 38, 41, 42, 45, 46, 47, 48, 53, 54, 55, 59, 60, 68, 69, 71 & 77) to support MEEB's liability under

---

[19]  This court did not find that the section 1692i violation caused plaintiff any actual damages.  In this court's discretion, the $800.00 award of statutory damages remains appropriate even without the added section 1692i liability.

section 1692c(b).  (Docket Entry # 60, § 1(b)).

The Memorandum and Order addresses these alleged section 1692c(b) violations on pages 122 through 132.  (Docket Entry # 63).  This court found one timely section 1692c(b) violation in the form of a May 13, 2008 letter (Ex. 69) from MEEB to Neil Heiger, Esq. ("Heiger"), an attorney representing a mortgagee of an April 2005 mortgage for unit 104.  The letter represented a lien amount against the unit as $31,309.09.  The remaining letters were untimely under the FDCPA, 15 U.S.C. § 1692k(d), and therefore did not provide a basis for liability under the FDCPA. This court found that the untimely letters, however, could provide a basis for per se chapter 93A liability.  MEEB seeks reconsideration of the FDCPA ruling and the chapter 93A ruling with respect to all of the letters (Ex. 38, 42, 45, 47, 55, 59, 60, 68 & 69).  (Docket Entry # 69, p. 16).

As explained above, the untimely FDCPA violations do not provide a basis for chapter 93A liability because of the absence of acts or practices by MEEB in the conduct of trade or commerce. That finding moots the present challenge to the untimely FDCPA letters (Ex. 38, 42, 45, 47, 55, 59, 60 & 68) as creating per se chapter 93A liability.  MEEB's argument therefore reduces to seeking reconsideration of the determination that the May 13,

2008 letter to Heiger (Ex. 69) violated section 1962c(b).[20]

MEEB's policy argument that section 1692c(b) is designed to combat embarrassing communications to a debtor's friends, neighbors and employer or invade a debtor's privacy does not survive the statutory text.  See Muzuco v. Re$ubmitIt, LLC, 2012 WL 3242013, *4 (S.D.Fla. Aug. 7, 2012) (rejecting similar policy argument as basis to avoid section 1692c(b) liability given the plain language of section 1692c(b)).  Interpreting the words in section 1692c(b) guided by the statutory framework and the purpose of the statute leads to the same conclusion reached in the Memorandum and Order.  See Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006) ("[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute" and "precedents or authorities that inform the analysis"); Lawson v. FMR LLC, 670 F.3d 61, 68 (1st Cir. 2012) (circuit "and Supreme Court precedent require" examining "broader statutory framework, including particularly the nearby language and the title and caption").  Heiger or Aegis are not among the excepted categories of individuals or entities in section 1692c(b).  As explained in the Memorandum and Order, the plain language of section 1962c(b) proscribes the May 13, 2008 communication.  Hence, it was not an

---

[20]  The Memorandum and Order did not find an independent violation of chapter 93A based on the May 13, 2008 letter.

error of law, let alone a manifest error of law.  This court
stands by that analysis.  (Docket Entry # 63, pp. 123-130).

II.  <u>PLAINTIFF'S RULE 59(e) MOTION</u>

Plaintiff initially moves for reconsideration of the
following two factual findings.  First, based on the entire
record, this court made the factual finding that, "Plaintiff's
first mortgagees had not informed Pondview of their names and
addresses."  (Docket Entry # 63, p. 35).  Second, this court
found that, "Under the facts, plaintiff's first mortgagees did
not apprise Pondview of their names and mailing addresses."
(Docket Entry # 63, p. 139).  The testimony of Richard E. Brooks,
Esq. ("Brooks"), a principal of MEEB, provides adequate support
for these findings.

This court declines to alter or amend them.  Thus, although
a manifest error of fact may provide a basis to allow a Rule
59(e) motion, <u>see</u> <u>Markel American Insurance Co. v. Diaz-Santiago</u>,
674 F.3d at 32 (quoting <u>Marie v. Allied Home Mortg. Corp.</u>, 402
F.3d 1, 7 n.2 (1st Cir. 2005), in parenthetical, as "acknowledging
four grounds" to grant Rule 59(e) motion including "'manifest
errors of law or fact'"), Brooks' testimony and the record as a
whole do not establish such an error relative to the above two
findings.

Plaintiff also moves to amend the judgment regarding the
failure to send the mortgagees the 30 day notice letters at least

27

30 days in advance of filing suit as not violating section 1692d.
(Docket Entry # 66, ¶ 2).  Section 1692d proscribes "conduct the
natural consequence of which is to harass, oppress or abuse any
person in connection with the collection of a debt."  15 U.S.C. §
1692d.  In finding no section 1692d liability based on the 30 day
notice letters, this court explained that, "MEEB's failure to
send the letters earlier does not have the natural consequence of
embarrassing plaintiff or oppressing or abusing him even if the
failure increased the litigation costs."[21]  (Docket Entry # 63, p.
142).  Plaintiff moves to amend this finding and the judgment
finding no section 1692d violation.

With respect to section 1692f liability, plaintiff objects
to the finding that the 30 day notice letters did not violate
"'section 1692f's prohibition of unfair and unconscionable
collection methods.'"  (Docket Entry # 66) (quoting Docket Entry
# 63, p. 144).  As stated in the Memorandum and Order, "[I]t was
neither unfair nor unconscionable to send the mortgagees the
letters at or around the time MEEB filed suit."  (Docket Entry #

---

[21]  As previously noted under state law, section 6(c) of
chapter 183A requires MEEB to send the 30 day notice letter to
the first mortgagee at least 30 days before filing suit "provided
that the first mortgagee has informed the condominium association
of its name and mailing address."  Mass. Gen. L. ch. 183A, §
6(c).  This court did not explicitly find that the failure to
send the mortgagees the 30 day notice letters at least 30 days
before filing suit violated section 6(c) of chapter 183A.
Rather, this court found that MEEB's failure to send the
mortgagees the 30 day notice letters earlier did not violate
section 1692d or section 1692f.

28

63, p. 144).  The Memorandum and Order held that, "MEEB did not
violate section 1692f by not sending or by delaying sending the
mortgagees the 30 day notice 30 days before fling suit."  (Docket
Entry # 63, p. 145).  As a final matter, plaintiff seeks to amend
the judgment to include a finding that he incurred actual damages
in the form of liability for substantial attorneys' fees and
costs as the result of MEEB's failure to comply with the 30 day
notice provision of section 6(c) of chapter 183A.  (Docket Entry
## 66 & 67).

    For present purposes, this court will assume arguendo that
MEEB violated section 6(c) by not sending the letters at least 30
days in advance of filing suit.  This failure to adhere to the
state statutory procedure, however, is not dispositive of the
section 1692d, the section 1692f or the per se or independent
chapter 93A violations.[22]  For reasons fully explained in the

---

    [22]  Citing a number of cases, the Memorandum and Order
explains that, "Even if MEEB did not comply with section 6(c) by
sending the first mortgagees notice 30 days before filing suit,
its failure does not necessarily establish a violation of the
FDCPA."  (Docket Entry # 63, p. 139).  Elsewhere, the opinion
states that any noncompliance with section 6(c) did not violate
section 1692f.  (Docket Entry # 63, pp. 143-144).  Side stepping
the issue of whether the first mortgagees "informed" Pondview "of
its name and mailing address" within the meaning of section 6(c),
the Memorandum and Order found that MEEB's failure to notify the
mortgagees at least 30 days in advance of filing suit was not
unfair and unconscionable under section 1692f, was not harassing,
abusive or oppressive under section 1692d and did not
independently constitute a violation of chapter 93A.  (Docket
Entry # 63, pp. 138-145).  It was only in the context of the
independent chapter 93A claim that this court found that Brooks
and other MEEB attorneys held an honest and good faith belief

Memorandum and Order (Docket Entry # 63, pp. 138-145) as well as partially reiterated by MEEB (Docket Entry # 74, § II), MEEB's conduct did not violate section 1692d or section 1692f. Plaintiff's argument that MEEB's failure to adhere to the statutory procedure in section 6(c) and avoid costs eventually passed to plaintiff by the first mortgagee (Docket Entry # 67, § 2) is unconvincing.  Because this court finds no manifest error of law or fact to alter or amend the no liability findings under section 1692d, section 1692f or chapter 93A based on the delay in sending the 30 day notice letters, plaintiff's argument about damages (Docket Entry # 67, § 3) is moot.

CONCLUSION

MEEB's Rule 59(e) motion (Docket Entry # 68) is **ALLOWED** in part and **DENIED** in part.  MEEB is not liable under chapter 93A or section 1692i.  Plaintiff remains entitled to $800.00 in statutory damages under Count One but is not entitled to relief under Count Two.  The judgment is amended to eliminate the $10,400.00 in damages under Count Two including prejudgment interest in the amount of $4,649.00.  Plaintiff's Rule 59(e) motion (Docket Entry # 66) is **DENIED.**  This court will conduct a status conference to set a briefing schedule for the attorney's

---

that sending the 30 day notice letters around the time MEEB filed suit was based on a reading of section 6(c) that the language supports.  MEEB's intent is not and was not relevant to its liability under sections 1692d and 1692f.  (Docket Entry # 63, p. 140).

fees issues on September 16, 2013, at 2:30 p.m.


                        /s/ Marianne B. Bowler
                      **MARIANNE B. BOWLER**
                      United States Magistrate Judge