UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM M. MCDERMOTT,
     Plaintiff,


    v.                                         CIVIL ACTION NO.
                                                    09-10159-MBB

MARCUS, ERRICO, EMMER & BROOKS, P.C.,
     Defendant.


**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR ATTORNEY (sic) FEES AND COSTS**
**(DOCKET ENTRY # 85)**

**September 29, 2014**


**BOWLER, U.S.M.J.**

    Pending before this court is a motion filed by plaintiff
William M. McDermott ("plaintiff") seeking attorney's fees in the
amount of $59,924.52 and costs in the amount of $2,343.14.
(Docket Entry # 85). Defendant Marcus, Errico, Emmer & Brooks,
P.C. ("MEEB"), a professional corporation of attorneys located in
Braintree, Massachusetts that concentrates in condominium law,
seeks to eliminate 115.1 of the total 541.15 hours plaintiff's
attorney expended because of inadequate documentation. MEEB
characterizes the invoice setting out the fees as block billing
which renders it difficult to distinguish between successful and
unsuccessful claims. MEEB also requests a reduction of any
lodestar amount based on the results obtained and the size of

awards in similar cases.  After conducting a hearing, this court took the motion (Docket Entry # 85) under advisement.  With plaintiff having submitted a second affidavit in response to a recent Procedural Order, the matter is ripe for review.

<u>FACTUAL BACKGROUND</u>

Plaintiff, a resident of the Pondview condominiums in Lynn, Massachusetts, instituted this action in February 2009 seeking redress for purportedly unfair debt collection activities by MEEB to collect condominium, loan payback charges and late fees as well as attorney's fees from plaintiff on behalf of MEEB's client, the Pondview Condominium Trust ("Pondview").  Created under a September 1986 Declaration of Trust (Ex. B), Pondview consists of a group of trustees that form the governing body of the Pondview condominiums.  Plaintiff's parents purchased unit 104 in 1986 and unit 105 in 1995 at the complex.  After their deaths in 2002 and by the spring of 2003 plaintiff held title to both units.  The condominium complex consisted of 19 units and plaintiff's monthly payments amounted to almost 10% of the incoming fees for the complex.

Under the Declaration of Trust, a Master Deed and Massachusetts General Laws chapter 183A ("chapter 183A"), Pondview had the ability and the authority to assess condominium fees, attorney's fees, late charges and costs of collection against a unit owner such as plaintiff.  <u>See</u> Mass. Gen. L. ch.

183A, § 6(a)(ii) & 6(b); (Ex. B, Art. V, § 5.3(C)). A number of years before Pondview retained MEEB as its attorney, Pondview instituted a policy imposing a $25.00 late fee for condominium fees received after the 15th of each month. After three consecutive months of nonpayment, Pondview's stated policy was to undertake legal action and file suit against the owner.

In the summer and fall of 2004, plaintiff fell behind in the payment of assessments, late fees and loan payback charges for both units. He did not agree with certain late fees and refused to pay them.[1] By the end of March 2005, plaintiff had not paid condominium fees, loan payback charges and certain late fees for January, February and March for both units. The nonpayment led to Pondview's decision to file suit.

In late March 2005, Pondview hired MEEB as its attorney. In late April 2005, MEEB, on behalf of its client Pondview, filed two collection suits against plaintiff, as a unit owner, in the Massachusetts District Court Department (Lynn Division) ("Lynn District Court"). MEEB filed these and an additional seven collection suits in Lynn District Court except for the last collection suit filed in September 2008 in the Massachusetts

---

[1] Massachusetts law does not condone plaintiff's decision. "[A] unit owner in a condominium may not challenge a common expense assessment by refusing to pay it." Blood v. Edgar's, Inc., 632 N.E.2d 419, 421 (Mass.App.Ct. 1994). Instead, an aggrieved unit owner "should timely pay-under protest-the common expense assessment" and may thereafter seek "a judicial determination of the legality of the assessment." Id. at 421-422.

Superior Court Department (Essex County).

Beginning in May 2005, MEEB communicated with plaintiff's mortgagees without obtaining plaintiff's consent.[2] See 15 U.S.C. § 1692c(b). Section six of chapter 183A imposes a requirement on a condominium association, such as Pondview, to send a letter "to the unit owner" when any portion of a unit owner's share of common expenses is delinquent for at least 60 days ("60 day letter").

A November 2012 opinion by this court details MEEB's vigorous advocacy to collect the amounts plaintiff owed, including attorney's fees, from late March 2005 to September 2008.[3] In April 2007, plaintiff's attorney filed an appearance in one of the collection suits and an appearance in another collection suit three weeks later. Plaintiff's attorney represented plaintiff in these state court actions without compensation. He received a one third contingent fee for representing plaintiff in connection with a counterclaim filed in one of the state court lawsuits.

Plaintiff filed this suit on February 3, 2009. The two count complaint sets out violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 ("section 1692") in

---

[2] By April 2005, plaintiff had mortgages on both units.

[3] Familiarity with these collection efforts set out at pages 12 to 65 in the opinion is presumed. (Docket Entry # 63, pp. 12-61).

Count One and section nine of Massachusetts General Laws chapter 93A ("chapter 93A") in Count Two. The FDCPA has a one year statute of limitations. 15 U.S.C. § 1692k(d). The delay in filing suit sharply curtailed the timely FDCPA violations purportedly committed by MEEB. One of plaintiff's two theories of recovery under chapter 93A, which has a four year limitations period, was that the untimely FDCPA violations constituted per se violations of chapter 93A. As set out in the trial brief, plaintiff sought actual damages in the amount of $314,552. Although the multitude of alleged FDCPA violations required extensive findings and conclusions, plaintiff eventually recovered $800.00 in statutory damages under Count One after a non-jury trial and post trial motions. The absence of "trade or commerce" within the meaning of section 2(a) of chapter 93A precluded an award under chapter 93A. (Docket Entry # 77, pp. 9-18).

The statutory damages award arose from the following three FDCPA violations: (1) MEEB violated section 1692c(b), which proscribes a debt collector's communications with third parties, by sending a May 13, 2008 letter directly to an attorney representing a mortgagee on an April 2005 mortgage for unit 104 (Ex. 69); (2) MEEB violated section 1692c(a)(2) by sending plaintiff, as opposed to his attorney, a 60 day letter dated June 30, 2008 (Ex. 50); and (3) MEEB violated section 1692c(a)(2) by

sending plaintiff, as opposed to his attorney, a 60 day letter
dated September 16, 2008 (Ex. 76). The chapter 93A claims
interconnected legally and factually with these successful FDCPA
violations and the similar, albeit untimely, FDCPA purported
violations.

Notwithstanding the relatively small damages award, the case
was extremely hard fought on both sides. The strong willed
adversarial nature of the case increased the complexity and
number of arguments presented. The accounting and tracking of
amounts properly owed contributed to the factual complexity of
the case. Indeed, this court issued a lengthy opinion addressing
those issues and a second opinion on reconsideration.

Plaintiff points out that representing him "posed special
challenges" and cites to a motion in limine to exclude
plaintiff's criminal record. (Docket Entry ## 38, 43, 86). This
court allowed the motion over MEEB's objection.

Recognizing the lack of success on the chapter 93A claim,
plaintiff reduced by half the amount of time charged for entries
that included both chapter 93A and FDCPA work.[4] He also
eliminated the time spent drafting a summary judgment motion that
he did not file. Plaintiff's counsel segregated time spent on

_____

[4] Plaintiff states that he reduced the entries that
included both chapter 93A and FDCPA work because the former
issues were "irrelevant to the outcome" of the case. This court
interprets the voluntary reduction as based on a lack of success.

core from non-core tasks and reduced his normal $250 hourly rate by one third for the latter tasks. For billing entries that reflected work spent on core as well as non-core tasks, plaintiff's counsel reduced the fee by 1/6. The actual invoice for counsel's work for the entire time period at his normal hourly rate of $250.00 totaled $119,849.03 for 541.15 hours of work. As a result of these reductions, plaintiff is seeking a reduced fee award of $59,924.52.

DISCUSSION

## I. Attorney's Fees

The FDCPA entitles a successful plaintiff to an award of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Where, as here, a plaintiff obtained an award of statutory damages, an attorney's fee award "is obligatory." French v. Corporate Receivables, Inc., 489 F.3d 402, 403 (1st Cir. 2007).

Both parties utilize a lodestar calculation to arrive at their proposed fee awards. Adhering to this reasonable position, see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 598-599 n.16 (2010) ("[m]any District Courts apply a lodestar method, permitting downward adjustments in appropriate circumstances" in FDCPA cases); Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C., 574 F.3d 852, 856 (7th Cir. 2009) (noting in FDCPA case that "district court generally begins

7

by calculating the lodestar"); _Camacho v. Bridgeport Financial, Inc._, 523 F.3d 973, 982 (9th Cir. 2008) (remanding FDCPA fee award in order for district court to calculate fee under lodestar method); _see also_ _Garcia-Rubiera v. Fortuno_, 727 F.3d 102, 116 (1st Cir. 2013) ("district court can hardly go wrong in selecting the so-called lodestar method when called upon to determine" attorney's fee award), this court turns to the task.

A.  _Hours Expended_

    The lodestar calculation multiplies the number of hours productively or reasonably spent by a reasonable hourly rate. _Diaz v. Jiten Hotel Management, Inc._, 704 F.3d 150, 153 (1st Cir. 2012); _De Jesus Nazario v. Morris Rodriquez_, 554 F.3d 196, 207 (1st Cir. 2009).  The number of hours reasonably spent excludes "those hours that are 'excessive, redundant, or otherwise unnecessary.'"  _Central Pension Fund of the Intern. Union of Operating Engineers and Participating Employers v. Ray Haluch Gravel Co._, 745 F.3d 1, 5 (1st Cir. 2014) (quoting _Hensley v. Eckerhart_, 461 U.S. 424, 434 (1983)).  In adjusting the hours, a court may "remove time that was unreasonably, unnecessarily or inefficiently devoted to the case and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims."  _De Jesus Nazario v. Morris Rodriquez_, 554 F.3d at 207 (citation omitted); _see_ _Spooner v. EEN, Inc._, 644 F.3d 62, 68 (1st Cir. 2011) (court may delete "any 'duplicative,

8

unproductive, or excessive hours'").

MEEB attacks a number of the hours expended and included in the lodestar as based on inadequate documentation. As the fee applicant, plaintiff bears the burden to establish the reasonableness of the hours sought. Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009). In discharging that burden, the plaintiff must produce "contemporaneous time and billing records, suitably detailed" to support the request. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011). By affidavit, plaintiff's counsel attests that the schedule he provided constitutes "contemporaneous billing records for [the] services performed." (Docket Entry # 85-1). Even with contemporaneous records, however, a court may discount or, in egregious cases, disallow hours when the contemporaneous records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008); accord Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001) (records kept "in reasonable detail" are ordinarily required to support fee request); Rogers v. Cofield, 935 F.Supp.2d 351, 362-363 (D.Mass. 2013). Thus, a court "may either discount or disallow those hours" that are not precise enough to assess whether the time spent was excessive or redundant, see Torres-Rivera v. O'Neill-

Cancel, 524 F.3d at 336; Alfonso v. Aufiero, 66 F.Supp.2d 183, 194 (D.Mass. 1999), or engage in a global reduction of the total hours sought.  See Torres-Rivera v. O'Neill-Cancel, 524 F.3d at 336, 339-340 (upholding 15% global reduction based on inadequate documentation and noting that "court may discount or disallow the total hours claimed"); Rogers v. Cofield, 935 F.Supp.2d at 363.

In examining the billing entries, clarification may "com[e] from surrounding billing entries as well as the docket."  Carmel & Carmel PC v. Dellis Construction, Ltd., 858 F.Supp.2d 43, 47 (D.D.C. 2012); see, e.g., Showtime Entertainment LLC v. Ammendolia, 885 F.Supp.2d 507, 532 (D.Mass. 2012) (entries referring to "'legal research'" which did not identify the claims nevertheless "sufficiently specific" because "timing of those entries" made it clear that the "research concerned" summary judgment motion on certain claims); Rogers v. Cofield, 935 F.Supp.2d at 363.  Simply stated, the plaintiff "must keep records in sufficient detail" to permit "a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."  Hensley v. Eckerhart, 461 U.S. at 441.

It is also well settled that a plaintiff "may not recover attorneys' fees on unsuccessful claims."  Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 35 (1st Cir. 2012); Hensley v. Eckerhart, 461 U.S. at 440.  This principle does not apply when

10

an unsuccessful claim includes "'a common core of facts' or is premised on a 'related legal theory linking it to the successful claim.'" Trainor v. HEI Hospitality, LLC, 699 F.3d at 35 (quoting Garrity v. Sununu, 752 F.2d 727, 734 (1st Cir. 1984), with internal quotation marks and brackets omitted). In such circumstances, "the award 'may include compensation for legal work performed on the unsuccessful claim.'" Id. (quoting Garrity v. Sununu, 752 F.2d at 734, with internal quotation marks and brackets omitted). The successful FDCPA claim based on the timely May 13, 2008 letter is premised on the same legal theory under section 1692c(b) as the eight untimely letters MEEB sent to third parties without plaintiff's consent. Similarly, the successful FDCPA claims based on the two 60 day letters is legally interrelated with the unsuccessful section 1692c(a)(2) claim based on the untimely 60 day letters. On a factual level, these timely FDCPA claims arise from a common core of facts regarding MEEB's attempts to procure reimbursement for its client from plaintiff's mortgagees.

Parsing through the billing entries, only a few entries merit reduction due to inadequate documentation. When placed in temporal context, the majority of the more cryptic entries allow this court to decipher the task and the necessity for the work. For example, a January 10, 2009 entry to "review docs, review with McDermott" (Docket Entry # 85-1) took place one month before

plaintiff filed this lawsuit.  Meeting or discussing a case with
a client and the strength of the documentation to file suit is
part of conducting the required reasonable inquiry under
Fed.R.Civ.P. 11.  Plaintiff reduced the $550 amount by one third
to account for the non-core task.  No further reduction is
required.

Entries on May 29 and June 2, 3 and 5, 2010, to "analyze
documents produced, bills and communications" (Docket Entry # 85-
1) logically concern the pending motion to compel and preparation
for a June 14, 2010 hearing.  The amount of time (24.93 hours)
however is excessive and reduced by half to 12.47 hours.  The
similar entries for June 9 and 12, 2010, are also reduced by half
to 4.45 hours.  The April 15, 16 and 17, 2010 entries to "analyze
documents produced" and "prepare list of documents produced" do
not identify the documents.  Pondview did not initially produce
any documents in response to a subpoena duces tecum served on
April 7, 2010.  (Docket Entry # 15).  Surrounding billing entries
do not explain the entries inasmuch as they refer to both an
upcoming deposition of a MEEB principal and documents produced by
MEEB.  It is therefore difficult to decipher the nature of the
task and the reasonableness of the 10.07 hours expended to
analyze the unidentified documents.  The same reasoning applies
to 4.23 hours spent on May 12 and 13, 2010, to "analyze docs-
notes."  (Docket Entry # 85-1).  Accordingly, the 10.07 hours and

12

4.23 hours are reduced by half to 5.04 hours and 2.12 hours respectively of compensable work. The April 17, 2010 entry for 3.84 hours, reduced by half to 1.92 hours, is compensated at the submitted non-core rate.

MEEB also objects to including hours for RICO and abuse of process entries. Although MEEB does not identify the actual entries, plaintiff's counsel expended 2.09 hours on May 20, 2009, to "review law facts abuse of process." (Docket Entry # 85-1). One of the primary issues in this case was whether MEEB engaged in "harassment or abuse" under section 1692d. 15 U.S.C. § 1692d. An entry two days later reflects 3.78 hours spent to "analyze law facts oppressive acts," an obvious reference to section 1692d which prohibits a debt collector from "harass[ing], oppress[ing], or abus[ing] any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Given the context, this court finds that plaintiff's counsel spent a reasonable amount of time researching what constitutes abusive or oppressive conduct under 1692d.

An entry dated July 6, 2010, refers to RICO and reflects 7.82 hours of work to "analyze law 93A, immunity, litigation, RICO." Plaintiff's counsel expended the hours to research these legal issues shortly after he filed the action. Surrounding entries elucidate that plaintiff was researching litigation immunity under chapter 93A. The July 6, 2010 entry provides

13

sufficient detail to ascertain the reasonableness of the hours expended. Because plaintiff already reduced the 7.82 hours by half and the work likely concerns a common core of facts or related legal theories to the successful FDCPA claims, no further reduction is appropriate.

The inclusion of "RICO" in an August 3, 2010, and an October 11, 2010 entry reflects that plaintiff's counsel researched issues related to amending the complaint to include a RICO claim. The August 3, 2010 entry requests 2.40 hours to "analyze law on amended scheduling order, pleadings, RICO" and the October 11, 2010 entry seeks compensation for 2.67 hours at a 50% reduced rate to "review law damages, emotional distress, injury 93A, trade or commerce, litigation, RICO." (Docket Entry # 85-1). The entries provide sufficient specificity to identify and assess the reasonableness of the tasks. The August 3, 2010 entry includes work interrelated to the successful claims. No further reduction is appropriate.

All of the time counsel expended drafting motions in limine, preparing for trial and during trial is reasonable and necessary. The number of hours is relatively modest. It is also appropriate to compensate for time spent on the attorney's fee application. Silva v. National Telewire Corp., 2001 WL 1609387, at *6 (D.N.H. Dec. 12, 2001) (compensating time spent on attorney's fee application in FDCPA case).

MEEB next disputes the necessity of expending 28.71 hours from September 29 to December 7, 2012, to "analyze" and "review" the 203 page opinion issued by this court on November 20, 2012. With the exception of .75 hours spent in September, the time was necessary to analyze the opinion given the number of issues addressed and the factual and legal complexity involved. The .75 hours on September 29 and 30, 2012, respectively to "analyze court orders" and to "review court order" does not warrant compensation. The November 20, 2012 order had not issued. The two entries are otherwise unenlightening as to what order or orders plaintiff's counsel analyzed and reviewed. The lack of detail as well as necessity to review court orders at that time warrants excluding the requested .75 hours.

Subject to the above exclusions and reductions, the remaining entries and hours are reasonable, necessary and not excessive. The self-pruning engaged by plaintiff's counsel is commendable and deserves considerable weight. See Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 15 (district court "understandably gave considerable weight" to the plaintiffs' "self-pruning" by discounting "total number of hours before compiling their fee request") (parentheses omitted).

B. Hourly Rate

Turning to the hourly rate, the fee applicant bears the burden to establish "'the prevailing hourly rate in the community

for the performance of similar legal services by comparably credentialled [sic] counsel.'" Moffat v. U.S. Dept. of Justice, 716 F.3d 244, 256 (1st Cir. 2013) (quoting Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 16, and omitting internal ellipses). Useful guideposts of the market rate in the prevailing community include "the rate that a private lawyer actually charges to clients in the ordinary course of his practice." Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 16. Another useful indicator is "data evidencing the prevailing market rate for counsel of comparable skill and experience." Id.

After providing information relative to his experience and practice, plaintiff's counsel avers that he charges a $250 hourly rate and has charged this rate for the last ten years. Based on his review of relevant case law and conversations with colleagues and clients, he attests that "the rate is consistent with the prevailing rate in the Greater Boston area." (Docket Entry # 85-1). In addition to these facts submitted by affidavit, another attorney engaged in private practice in the greater Boston area and in Lynn attests by affidavit that the $250 hourly rate "is more than reasonable and consistent with the prevailing rates charged in the Greater Boston area by attorneys with comparable skill and experience" to plaintiff's counsel. (Docket Entry # 85-1). This court agrees that the $250 hourly rate for the services provided is reasonable and consistent with the

prevailing rate in the community.  Accordingly, the requested
$250 hourly rate is appropriate.

In accordance with the foregoing reductions, the $119,849.03
total amount is reduced to eliminate 22.88 hours at the $250
hourly rate ($5,720) and 1.92 hours at the non-core rate ($320).
Multiplying the reasonable hourly rate of $250 by the hours
reasonably worked, subject to the foregoing reductions by this
court and by plaintiff, yields a lodestar of $113,809.03 prior to
the global 50% reduction submitted by plaintiff.[5]  Once
calculated, the lodestar may be subject to further adjustments
"based on other considerations."  <u>Central Pension Fund of the
Intern. Union of Operating Engineers and Participating Employers
v. Ray Haluch Gravel Co.</u>, 745 F.3d at 5.  The lodestar
nonetheless "'represents a presumptively reasonable fee.'"
<u>Spooner v. EEN, Inc.</u>, 644 F.3d at 68 (quoting <u>Lipsett v. Blanco</u>,
975 F.2d 934, 937 (1st Cir. 1992)).

C.  <u>Lodestar Adjustments</u>

The Supreme Court identifies the "'results obtained' as 'a
preeminent consideration in the fee-adjustment process.'"  <u>Joyce
v. Town of Dennis</u>, 720 F.3d 12, 27 (1st Cir. 2013) (quoting <u>Coutin
v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 338 (1st Cir.

_____

[5]  As discussed under Roman numeral II, the costs of
parking, travel and postage are out of pocket expenses typically
charged to clients and therefore considered part of an award of
attorney's fees as opposed to an award of costs.  These "costs"
are added to the lodestar later in this opinion.

1997)).  In assessing the quality of a plaintiff's results, a court examines "a combination of the plaintiff's claim-by-claim success, the relief achieved, and the societal importance of the right vindicated."  De Jesus Nazario v. Morris Rodriguez, 554 F.3d at 207; accord Joyce v. Town of Dennis, 720 F.3d at 27 (noting these "multiple facets" and that "'all three types of "results" potentially bear upon the amount of the ensuing fee award'").  As to claim-by-claim success, "If a plaintiff prevails on an insubstantial subset of her interrelated claims and obtains only limited relief, the trial court has discretion to shrink fees to reflect that inferior result."  Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d at 339.

Proportionality of the fee award to the amount of damages recovered is "one item in the constellation of factors to be assessed."  Central Pension Fund of the Intern. Union of Operating Engineers and Participating Employers v. Ray Haluch Gravel Co., 745 F.3d at 6; see French v. Corporate Receivables, Inc., 489 F.3d at 404 ("limited success at trial" provides "accepted ground for limiting fees under the FDCPA").  Similarly, "a significant gap between the relief requested and the result obtained" may warrant a downward adjustment.  Spooner v. EEN, Inc., 644 F.3d at 68.  As urged by MEEB (Docket Entry # 89), awards in similar cases may provide another factor to consider. See Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d at 337

18

n.3.

Here, plaintiff sought $314,552 in the trial brief (Docket Entry # 60) yet recovered statutory damages of $800. The amount of the lodestar as it currently stands also greatly exceeds the amount of damages recovered. To state the obvious, plaintiff recovered on an insubstantial subset of the interrelated claims. He also obtained only limited relief. A substantial reduction is therefore appropriate.

Success is nonetheless not measured only in terms of the monetary recovery, a fact this court has considered. "Fee-shifting provisions in general reflect a legislative judgment that '"the public as a whole has an interest in the vindication of the rights conferred by the statutes over and above the value of a remedy to a particular plaintiff."'" <u>Joyce v. Town of Dennis</u>, 720 F.3d at 31 (quoting <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986), with ellipses omitted). A consumer protection statute such as the FDCPA makes it financially feasible for consumers to prosecute violations and thereby incentivizes debt collectors to refrain from violating consumers' rights. <u>See</u> <u>Phenow v. Johnson, Rodenberg & Lauinger, PLLP</u>, 766 F.Supp.2d 955, 959 (D.Minn. 2011) (consumer protection statutes such as the FDCPA "are designed to make it possible for consumers to prosecute violations of the law and thus incentivize defendants to behave in a way that does not violate consumers'

19

legitimate interests"); see also Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995) (FDCPA plaintiff seeks vindication of important rights) (quoting City of Riverside v. Rivera, 477 U.S. at 574).

Moreover, plaintiff voluntarily discounted certain entries by 50% to account for the work on the chapter 93A claim and then discounted the global amount by another 50%. Indeed, plaintiff significantly reduced the actual total of $119,849.03 to $59,924.52. See Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 15. This case was also hard fought. See Joyce v. Town of Dennis, 720 F.3d at 32 (district "court could not properly ignore the Town's vigorous defense of the case"). On the other hand, awards in similar cases militate in favor of a significant downward adjustment. See French v. Corporate Receivables, Inc., 489 F.3d at 403-404 (affirming lower court's FDCPA fee award of $2,500 in case where one of the plaintiffs recovered FDCPA statutory award of $1,000); Edge v. Norfolk Financial Corp., 2005 WL 2323193, at *1, 10 (D.Mass. Aug. 29, 2005) (awarding attorney's fees of $15,490 in context of FDCPA agreed judgment of $1,000); cf. Armstrong v. Rose Law Firm, P.A., 2002 WL 31050583, at *1, 5 (D.Minn. Sept.5, 2002) (awarding more than $43,180 to FDCPA plaintiff even though plaintiff recovered only statutory damages of $1,000).

Weighing all of these factors and exercising this court's

discretion, a downward adjustment of 65% to the lodestar is appropriate.

II. <u>Costs</u>

Plaintiff next seeks a total of $2,343.14 in costs under section 1692k(a)(3). Arguing that 28 U.S.C. § 1920 ("section 1920") limits an award of costs to those enumerated in section 1920, MEEB objects to a $5.54 cost for certified mail and $180 in charges for parking and travel.

Plaintiff requests reimbursement for $20 daily "parking and travel" charges during trial. He additionally submits two $10 charges for two days to attend post trial motion hearings. The only other travel charge is for "travel L & L" on April 8, 2010, in the amount of $20. Because the invoice elsewhere reflects that plaintiff's deposition took place on April 8, 2010, this court draws the reasonable assumption that the $20 travel fee that day is for plaintiff's counsel to attend the deposition.

Section 1692k(a)(3) entitles successful plaintiffs to "the costs of the action, together with a reasonably attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). As noted above, the language makes an award of attorney's fees and costs obligatory. <u>See</u> <u>French v. Corporate Receivables, Inc.</u>, 489 F.3d at 403 (award of attorney's fees is obligatory); <u>Allen v. Lindner & Associates, PC</u>, 2013 WL 1947265, at *1 (D.Mass. May 8, 2013) (prevailing party under FDCPA "is entitled to costs and

21

reasonable counsel fees").

MEEB overlooks that travel expenses are ordinarily part of an attorney's fee award as opposed to a costs award. "It is settled beyond peradventure that reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute." Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 17. Indeed, "the availability of such remediation *is not limited to items recoverable as court costs under section 1920.* Rather, such recovery can extend to a broad range of other items, *including travel expenses*, computer time, and the like." Id. (emphasis added). Parking is also reimbursable as part of an attorney's fee award. See InvesSys, Inc. v. McGraw-Hill Companies, Ltd., 369 F.3d 16, 22 (1st Cir. 2004) ("it is not uncommon for courts to allow such costs as travel, long distance calls, and parking on top of the hourly fee" as encompassed in "phrase 'attorney's fee'"). In no uncertain terms, the First Circuit in Hutchinson held "without serious question, that reasonable costs and expenses for travel, printing, and photocopying can be recovered in a fee-shifting proceeding without regard to the limitations contained in 28 U.S.C. § 1920." Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 17. The parking and travel costs to attend trial, two post trial motion hearings and plaintiff's deposition in the amount of $180 are

properly compensable as part of the fee award.

As to the certified mail charge, "out-of-pocket expenses incurred by counsel . . . which are customarily understood as 'attorney's fees'" may include items such as "courier service, . . . postage, and parking." Data General Corp. v. Grumman Sys. Support Corp., 825 F.Supp. 361, 367-368 (D.Mass. 1993); accord Evans v. Books-A-Million, __ F.3d __, 2014 WL 3882506, at *8 (11th Cir. Aug. 8, 2014) ("definition of costs under § 1920 is not controlling and" expenses for "postage and travel may be awarded as attorneys' fees" under cost shifting statute if reasonably incurred); Mota v. University of Texas Houston Health Science Center, 261 F.3d 512, 529 (5th Cir. 2001) ("'attorney's fee'" allowed under fee shifting statute includes "'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client . . .,' such as postage . . . and travel costs"). The $5.54 certified mail charge is therefore part of the compensable attorney's fee award.

MEEB does not object to the remaining expenses. These expenses are all within the reach of section 1920. They include the cost of necessary trial transcripts, filing and sheriff's fees and necessary copying costs for documents used in the case. See 28 U.S.C. § 1920(1), (2) & (4); In re Ruhland, 492 B.R. 92, 97 (Bkrtcy.D.Mass. 2013) (allowing cost to serve subpoena by Suffolk County Sheriff's Department under section 1920(1));

Bowling v. Hasbro, Inc., 582 F.Supp.2d 192, 209-210 (D.R.I. 2008) (copies "under § 1920(4) need not be introduced at trial" as long as "they reasonably appeared necessary when they were obtained").

In sum, adding the $185.54 to the unadjusted lodestar fee of $113,809.03 yields a lodestar of $113,994.57. Adjusting the lodestar downward by 65% results in an attorney's fee award of $39,898.10. Plaintiff is also entitled to costs in the amount of $2,157.60 under section 1920 and Fed.R.Civ.P. 54(d).

CONCLUSION

In accordance with the foregoing discussion, plaintiff's motion for attorney's fees (Docket Entry # 85) is **ALLOWED** to the extent that plaintiff is entitled to an attorney's fee award of $39,898.10 and costs in the amount of $2,157.60.


   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge